## In re ENO'S WILL.

(Surrogate's Court, New York County. February 23, 1916.)

**1. WILLS ☞203—"PROBATE PROCEEDING"—NATURE.**

A "probate proceeding" is one in rem, the whole issue is directed to the factum of will, and there is no plaintiff nor defendant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 502–504; Dec. Dig. ☞203.

For other definitions, see Words and Phrases, First and Second Series, Probate Proceeding.]

**2. WILLS ☞318—PROBATE—TRIAL.**

Code Civ. Proc. § 2538, providing that in probate proceedings the surrogate must make an order directing the trial by jury of any controverted question of fact where any party appearing seasonably demands it, must be so construed as to harmonize with section 2614, directing that before admitting a will to probate the surrogate must inquire into the facts and must be satisfied of the genuineness of the will and the validity of its execution, and the jury are but triers of controverted facts submitted to them by the surrogate, and unless the surrogate is satisfied with the findings of the jury he must ignore them, unless the trial is had in the Supreme Court.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 751–754; Dec. Dig. ☞318.]

**3. COURTS ☞481—PROBATE PROCEEDINGS—TRIAL—ISSUES.**

An order transferring to the Supreme Court the trial of issues in contested probate proceedings is not in contravention of an order settling issues of fact and directing a trial by jury, but is supplemental thereto.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1279–1287; Dec. Dig. ☞481.]

**4. COURTS ☞481—PROBATE COURTS—DECREE IN REM—CONCLUSIVENESS.**

A decree in rem rendered by one surrogate of New York county should not be set aside by the other surrogate.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1279–1287; Dec. Dig. ☞481.]

**5. COURTS ☞481—PROBATE COURTS—JURISDICTIONAL ORDERS—CONCLUSIVENESS.**

A jurisdictional interlocutory order of one surrogate of the county of New York should not be disturbed by the other surrogate in so far as it is consistent with the rights of the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1279–1287; Dec. Dig. ☞481.]

**6. WILLS ☞318—PROBATE PROCEEDINGS—ORDER FRAMING ISSUES FOR TRIAL —"TRIAL OF PROBATE PROCEEDINGS."**

An order framing issues for trial in a contested probate proceeding is a part of the trial of the probate proceeding, within Code Civ. Proc. § 2506, relating to proceedings at chambers, and further requiring all contested probate proceedings to be disposed of at the Trial Term; but this rule may not apply where issues are first framed for trial in the Supreme Court.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 751–754; Dec. Dig. ☞318.]

Proceeding to probate the last will of Amos F. Eno, deceased. On motion for order transferring issues for trial in the Supreme Court. Denied.

In support of motion:

Nash & Jones, of New York City, for trustees of Columbia University in City of New York.

Henry De Forest Baldwin, of New York City, for proponents.

Cadwalader, Wickersham & Taft, of New York City, for New York Ass'n for Improving Condition of Poor.

De Forest Bros., of New York City, for Metropolitan Museum of Art.

Evarts, Choate & Sherman, of New York City, for American Museum of Natural History.

Stewart & Shearer, of New York City (Austen G. Fox, Wallace Macfarlane, H. De F. Baldwin, and Joseph H. Choate, Jr., all of New York City, of counsel), for New York Public Library, Astor, Lenox and Tilden Foundations.

In opposition to the motion:

Gould & Wilkie, of New York City, for General Society of Mechanics and Tradesmen.

Leslie J. Tompkins, of New York City, for New York University.

Charles H. Beckett, of New York City, for Gifford Pinchot and others.

Simpson, Thacher & Bartlett, of New York City, for William P. Eno.

Arthur C. Train, of New York City, for Henry Lane Eno.

Sullivan & Cromwell, of New York City (Leslie J. Tompkins, Clarke M. Rosecrantz, Reeve Schley, Edwin C. Mulligan, Charles Albert Perkins, and Emery H. Sykes, all of New York City, of counsel), for Antoinette E. Wood and others.

Daniel J. Mooney, of New York City, special guardian, for Gifford Pinchot, 2d, and others.

FOWLER, S. This is a motion addressed to the surrogate, sitting at this February Trial Term of the Surrogate's Court, for an order transferring the issues in a contested probate proceeding to a trial term of the Supreme Court of the state, pursuant to section 2538, Code of Civil Procedure. It appears that the usual interlocutory order for trial by jury of stated issues of fact in this proceeding pursuant to rule 7 of this court has already been made by my honorable colleague sitting at chambers on the 17th day of December, 1915. I observe that this order was, however, made after I had first announced, on the prior motion in this matter for temporary administration (as appears by the published reports of the proceedings then before me), that I would send the issues of fact for trial by jury demanded by contestants to the Supreme Court, if the cause was ripe for that disposition. I was then informed by counsel (Mr. Leslie J. Tompkins) that the cause was not ripe for that solution and no such order was made by me.

The proceeding for probate herein first appeared for trial on the contested probate calendar at a Trial Term of this court for January, 1916, held by Mr. Surrogate Cohalan; but, counsel not being ready in January, the cause was adjourned (as it now appears under a misapprehension, to which I shall hereafter advert), to the March Trial Term, 1916, to be held by Mr. Surrogate Cohalan, thus passing over

the entire February Trial Term. Had it not been for such misapprehension, the cause would have regularly appeared on the list of contested probates at this February Trial Term, 1916. In that event this motion now here could have been made at any time before the jury was sworn, and there would have been no embarrassment about the disposition of this motion, as under section 2538, C. C. P., the issues of fact for a jury could either be tried by myself and a jury (one being duly impaneled for February term, 1916), or if deemed in the better interest of the parties it could then have been regularly transferred, under the powers conferred by said section 2538, C. C. P., to the Supreme Court. This I understood to be conceded by all the counsel now before me. But any such disposition at this time is frustrated, wholly by reason of the misapprehension before mentioned, unless this present motion is now regularly sub judice as claimed by the motioners.

The present motion made at this Trial Term of this court for February, 1916, assumes importance, not only because of the magnitude of the charitable bequests contained in the will of the late Mr. Eno, now offered for probate, but to some extent, because of the uncertainty of the true meaning of the somewhat vague Practice Act since September, 1914, regulating the practice and procedure in this court in contested proceedings for probate.

The conversion by the Surrogates' Act of 1914 of a probate court into a court where trials by jury may be had in probate proceedings, under certain circumstances, is in itself such a revolution in the former practice in probate matters, as administered in New York for upwards of two centuries and in the common-law system for upwards of 750 years, that it is not surprising that very important questions of law are presented by this motion. I may call attention in passing to the fact that in remodeling the old Probate Courts of the country, whence we derived our common law, no such bold and subversive procedure was attempted by the skillful law-reformers of that country. Our Surrogates' Act of 1914 (Laws 1914, c. 443), is without precedent in the legislation of any country.

[1,2] A probate proceeding is a proceeding in rem; there is no plaintiff and no defendant; the whole issue before the probate court is one directed to the factum of will; and the entire proceeding is on the testamentary script or paper which is always the res incerta of any inquisition or trial in the Surrogate's Court in a probate proceeding. By the express terms of section 2614 of the present Code of Civil Procedure the surrogate remains, even under the new procedure, the exclusive judge of probate. He alone can make a decree of probate. That mandatory section, to which I refer, directs:

"That before admitting a will to probate, the surrogate must inquire particularly into the facts and circumstances, and must be satisfied of the genuineness of the will, and the validity of its execution."

The section now regulating the trial by jury in contested probate proceedings (section 2538, C. C. P.) provides that in probate proceedings the surrogate must make an order directing the trial by jury of any controverted question of fact, if any party appearing seasonably demands such trial. This last-mentioned section must be so construed

as to harmonize with section 2614, C. C. P. The jury are not by the new act made judges of probate, but triers of certain controverted facts to be submitted to them by the trial surrogate in probate proceedings. Unless the judge of probate is satisfied with the answers of the jury to the special questions thus submitted to them, it is obvious that the surrogate cannot admit the will to probate if he conscientiously discharges the mandate committed to him alone by section 2614, C. C. P. It would be wrong for the surrogate to ignore his official and personal obligations, because of the findings of a jury, if they were not satisfactory to the surrogate. There is no provision of law which makes the answers or findings of the jury to the questions submitted to them by the surrogate conclusive per se on the conscience of the surrogate, *unless the trial of such issues is had in the Supreme Court.* Section 2538, C. C. P.

In view of the sections of the Code (2614, 2538) just mentioned, it is obvious, I think, that the old practice on a devisavit vel non once issued out of chancery affords an outline for the logical practice to be pursued when the trial is had with the aid of a jury in the Surrogate's Courts under the new act. If the chancellor was not satisfied with the verdict on the issues submitted to the jury, he directed a new trial or trials, sometimes as many as three. So uncertain is our practice in jury cases in this court at the present time that in several recent instances in this court the jury have found a general verdict for "plaintiff" or "defendant," as the case may be, although there is no plaintiff and no defendant in this court in a probate proceeding, which, as I stated, is a proceeding on the paper propounded, or one in rem. I am only illustrating by this example the serious difficulties the surrogates labor under in the attempt to fit a trial by jury into the old proceedings for probate in this court. There are countless other difficulties arising under the new Practice Act which I could name if I deemed it essential to this time. But I shall confine myself to one other only. The new Practice Act of 1914 (now chapter 18, C. C. P.) makes a provisional cross-reference to the whole of the Code of Procedure for the proper practice in jury trials in this court (section 2770, C. C. P.). This cross-reference gives rise to new difficulties rather than elucidates them. A similar cross-reference was contained in England in the new County Court Rules (themselves very voluminous) by an omnibus reference to all the still more voluminous and discordant rules of the other courts. This single error has given rise in that country to such condemnation that it imperils the entire modern reform regulating practice by rules of court. It is now urged in that country that the judges have not sufficient time or experience to regulate practice by rules of court, and that the rules themselves are too bulky, inconsistent, and prolix to be advantageous to the public. Of the truth of this accusation I have no experience. I mention it only to illustrate the vice of a cross-reference in a statute to rules to be adopted provisionally.

The inherent difficulties arising under the present Surrogate's Practice Act, providing for jury trials in contested probate proceedings, are illustrated further by those arising even under former section

2653a, C. C. P. of the Code of 1913, which was a much more comprehensive and artificial act than the present, regulating, as section 2653a did, the parties, the burden of proof and the various other matters of procedure in the new form of action allowed under section 2653a. I may remark at this point that the new form of action at law, allowed by section 2653a, has the unique distinction of being the only new form of action at law invented in the last few centuries; all other forms of action known to our common law or to the common law of England are sequential developments of the original common law writs. The desire to get rid of the perplexities occasioned by the new type of actions brought under section 2653a was the main justification of the present reforms embodied in the Surrogate's Act of 1914. Thus it is that one mischief always breeds another. Reforms which are inartificial are always full of danger to litigants.

[3] As to the merits of this motion so ably presented with care and precision by the distinguished counsel for the proponent and the residuary legatees, I entertain not a single doubt, and had it not been for the misadventure alluded to and the cause been now regularly on for trial before me at this February term (as it should have been, in the ordinary course), I should have deemed it my imperative duty, in view of the discretion lodged in the trial surrogate and the inconclusiveness of a verdict by the jury in this court and the many uncertainties of our new practice, to grant this motion. The transfer to the Supreme Court obviates many difficulties and much lessens the costs and expense to the parties. But the trial of this cause, for the reason stated, is not now on the docket or list of causes for trial before me at this February term. It is now on the trial list for the March term. It is nevertheless urged by counsel for the motioners that under the act now regulating this court this is the only place where this motion, so brought on before me, can be heard, and that, notwithstanding the formal order of my learned colleague directing a trial by jury, I am obligated to decide the motion now presented at this Trial Term of the court. The reasons adduced by counsel for the motioners for this conclusion are certainly forcible and to my mind proper and logical. Their views are entitled to respect. I agree with them that, if I were to grant this motion, it would not be in opposition to the order of my learned colleague, but in execution and furtherance thereof.

When an order for trial by jury in a probate proceeding is made in this court, it is a just, proper, and full compliance with such order to transfer the controverted issues of fact to the Supreme Court for trial. It is not a contravention of such order. The order settling the issues does not deprive the surrogate at Trial Term of a control of the trial, and his further order transferring the trial of the issues to the Supreme Court is not contrary to the terms of the original order for trial by jury, but supplemental or auxiliary thereto and in the orderly course of practice prescribed by the present Code. There ought to be no genuine contention over such a plain proposition as this, and on the argument I understood all the counsel resisting the motion to assent to its accuracy. But, as I said for the reason stated, the proceeding for probate is not on at this term.

It is next argued by counsel for the motioners, that it is always at any time in the discretion of either surrogate for this county, when sitting in this part, to make an order transferring any contested probate proceeding in which a jury is demanded to the Supreme Court whether the proceeding is on the trial list at that term or not. They also urge that this motion now here is the first invocation of the exercise of a discretion lodged in either surrogate, and that such invocation can only be made at present at this Trial Term of this court. It may be that this contention is entirely accurate. In any event I am so impressed by its force that I have felt it my duty not to remit this motion to my learned colleague, as I should like to do, but to take it under advisement. If the motioner's contention is accurate my colleague could not hear the motion if I remitted to him.

Upon the merits of the motion I have no hesitation in saying that if I were convinced that it was consistent with the better procedure in this court I should certainly grant it in common justice to the parties before me. It is only about the expediency of any such course at this time that I entertain a little doubt.

[4] As regards the expediency of my making this order let me point out that this is not a motion affecting a decree of a Surrogate's Court. If it were, I should not entertain it for a moment. Decrees of a Surrogate's Court are decrees in rem. By the public law decrees in rem are confided in by all the world, whether parties or not. Decrees in rem never should be disturbed, unless for the gravest causes allowed by law. In respect of decrees in rem the surrogates of this county have coequal jurisdiction and responsibilities, and although, by reason of the fact that their respective offices were erected by separate acts of the Legislature, there are some unsettled questions as to duties and powers in respect of other matters, these questions do not relate to decrees in rem or to the jurisdiction of this matter. If decrees made by one surrogate were to be set aside by the other, the rightful authority of the court would be impaired. This is to be avoided. I have never disturbed a decree of this court.

[5] In so far as is consistent with the rights of the parties, it is also true that a jurisdictional interlocutory order of one surrogate for this county should not be disturbed by the other. I recognize this principle to the fullest extent. But if an order is not jurisdictional, and is in express violation of the rights of the parties, it presents another question. In respect of nonjurisdictional orders which clog the wheels of justice the principle of comity may have no application. I remember when in the Supreme Court the orders of the late Justice Donahue were constantly vacated by the late Justice N. Davis of that court in an important case with which I am familiar. But this point is not in any way involved in this matter now here. I mention it by way of illustration and precedent only.

This motion only apparently conflicts with the comity desirable in courts of first instance. In point of fact this motion is not in conflict with proper comity. This motion is claimed by eminent counsel to be an invocation of a discretion lodged in either surrogate when at

Trial Term. This discretion, it is claimed, has not been as yet exercised by either, and it can be exercised only at Trial Term. That is the whole controverted point now involved in this particular motion. On the true construction of the new Practice Act for this court I am inclined to the contentions presented by the counsel for the motion; but, should I grant the motion, it might seem that I was infringing some order of my colleague, and this, in the interest of the great business of this court, intrusted to two surrogates, is to be deprecated. Weighty public reasons (which I will not detail) compel me to avoid even the appearance of judicial discourtesy, if I can properly do so in justice to the parties.

Before announcing my solution, let me consider further for a moment another aspect of this motion. The order of my learned colleague for trial by jury in this proceeding was made at the chambers of this court, pursuant to our rule of court No. 7. The history of this new rule is as follows: Immediately after the passage of the new Surrogate's Law my learned colleague, in common with some other surrogates, felt that new rules of court were imperative. With this view I did not concur. Consequently he felt constrained to publish his rules by himself. Rule No. 7 was one of the series which were first composed, published, and promulgated by my learned colleague, or under his auspices, without my consent and on his sole responsibility. The publication of rules of court by one surrogate in this county, without the concurrence of the other, was without precedent, and it created such dismay, confusion, and consternation among the innocent suitors in this court—who did not know what to do with two sets of rules, the old and the new—that with great reluctance I concluded to defer to my colleague's better judgment and join in their promulgation, after a few changes in language had been made in the various rules already so promulgated. I should have wished, had it been possible, perhaps with hypercaution, to take more time for the consideration of the new rules, in view of the many difficult situations created by the act of 1914 in the practice of this court. But delay after his action was inexpedient; so I signed the rules.

[6] About rule 7 I am frank to say that, although I am now fully responsible for its final promulgation, I have long entertained some doubt as to its validity, if it is construed to authorize a surrogate sitting at chambers to make the order it specifies. I think there is no power in the surrogate sitting at chambers to order a trial by jury and frame issues in a contested probate proceeding for trial by such jury. My doubt concerns the rule's correspondence with the statute. If framing issues is a part of a trial, or part of a probate proceeding, there is no power to interfere at chambers with the trial, and the rule is pro tanto ultra vires. The provisions of the Code relating to the powers and duties of the surrogates for this county were mandatory, jurisdictional, and highly peculiar. Section 2506, C. C. P., reads as follows:

"The term of that court held at the chambers shall dispose of all business except contested probate proceedings; all contested probate proceedings shall be disposed of at the Trial Term."

To my mind an order framing issues for trial in a contested probate proceeding is a part of the trial of the probate proceeding unless, perhaps, such issues are first framed for a trial in the Supreme Court under section 2506, C. C. P. In chancery, in the trial of a suit in equity, involving the validity of a will, the chancellor or vice chancellor (as the case might be) presiding at the trial in equity always framed the issues on a devisavit vel non, sent to the common-law court, and the trial was then proceeded with in the common-law court until the verdict. After the verdict came back the trial in chancery was resumed.

But I do not as yet feel sufficiently confident in the accuracy of my own conclusions about some of the questions arising under the new act to be dogmatic. In view of the peculiar relations which courts of the surrogate now bear to the Appellate Division, I am inclined to place my decision on this motion in such shape that it may be speedily presented to that tribunal for that weighty determination which alone can give ease to litigants in this court and determine the proper practice for us to pursue. The powers of the Appellate Division in respect of the courts of the surrogates continue very like those which were long exercised over the older courts of probate. I have remarked before that the modern legislation could not have been unmindful of the old precedents. Matter of Martin, 80 Misc. Rep. 17, 141 N. Y. Supp. 784. In any event, as surrogate I have always been inclined to defer to the Appellate Division as the final repository of the powers and jurisdiction in a manner delegated, as it were, to the surrogate pro hac vice.

After anxious consideration and much reflection I have concluded that it would be in the best interests of the court and of all concerned if I should for the present deny the motion, but without prejudice, and with leave to renew it at any time or place counsel choose after the Appellate Division have reached a conclusion on the merits of the appeal from my order. This may be very speedily accomplished if desired. In the meanwhile the trial of the contested proceeding for probate should, I think, be stayed.

I will accordingly pro forma deny this motion for the present solely on the ground of my want of power under the new act to make the order sought. If I am held to have the power, I shall then proceed to make the order.