(47 Misc. Rep. 320.)

## In re ECKLER'S WILL.

### (Surrogate's Court, Herkimer County.   May, 1905.)

1. WILLS—PROBATE—DUTY TO REFUSE.

   The probate of an alleged will should be refused, where the surrogate is not judicially satisfied that the instrument was executed with the required formalities and expresses the testator's true intention, and that testator was at the time of its execution in all respects competent to make a will and not under restraint.

2. SAME—UNDUE INFLUENCE—PRESUMPTIONS—BURDEN OF PROOF.

   Testator, who was 82 years of age and of but limited education, left practically nothing to his next of kin and heirs at law, with most of whom he was upon good terms, and devised his estate to a husband of his first cousin, who prepared the will and, although a layman, advised testator in regard thereto. The will was witnessed by testator's cousin and a cousin of hers. *Held*, that a presumption of undue influence arose from the facts, and it was incumbent upon the beneficiary to affirmatively show that the will was the voluntary and original expression of testator's mind and intention.

3. SAME—EVIDENCE—SUFFICIENCY.

   In a will contest, evidence *held* insufficient to sustain the burden which rested upon proponent, under the circumstances, of rebutting a presumption of undue influence arising from such circumstances and of showing that the will was the free and intelligent expression of deceased's wishes.

Proceedings on the contested probate of the last will and testament of James Eckler, deceased.   Probate denied.

James Conkling and Myron G. Bronner, for proponents.

Henderson & Bell, Steele & Prescott, and Arthur Beebe, for contestants.

DEVENDORF, S.   The written instrument offered for probate bears date June 12, 1895, and purports to be the last will and testament of James Eckler, who died April 17, 1900, in the town of Warren, Herkimer county, aged upwards of 87 years.   He left surviving him an incompetent sister and several nephews and nieces, children of deceased sisters.   The instrument contested disposes of all of the deceased's property, both real and personal, amounting to upwards of $25,000, and gives the same to the proponent, George H. Cristman, who is not a blood relative of the deceased, but whose wife is a first cousin.   The language of the proposed will is peculiar, and, considering the facts surrounding its execution, in itself raises a suspicion that the testator, considering his age, condition of mind, and degree of intelligence, may have misunderstood its sweeping and far-reaching provisions.   It was prepared upon an ordinary blank and provides for the payment of debts as follows:

"I give, devise, and bequeath to George H. Cristman of Columbia, Herkimer County, N. Y., all my personal and real estate of which I may die seised or possessed, to have and to hold the same unto themselves, their heirs and assigns, forever, upon the uses and trusts following, namely, in trust to pay all reasonable expenses for the support, care, and clothing and funeral expenses of Eva M. Eckler, my sister.

"Second. Upon the decease of the said Eva M. Eckler, I give and devise to George H. Cristman all the rest, residue, and remainder of my estate, both real and personal, of whatever name and nature."

The proposed will was drawn and is in the handwriting of the principal beneficiary, Cristman. It appears that Daniel Crim, a relative and lifelong friend and adviser of the deceased, died at the town of Warren, Herkimer county, just prior to the date of this proposed will, and his funeral was held at said town June 11, 1895; that at that time George H. Cristman and his wife attended the funeral, going from their home at Cedarville, eight miles distant, and after the funeral, instead of returning to their home, drove to Mohawk, where the deceased was then living, and remained at his house over night. His family at that time consisted of the sister Eva, who was an incompetent person, and a sister Angeline, who was confined to her bed and suffering with a fatal illness, which terminated in her death July 3d following. It appears that Angeline was urging the deceased to make a will for the benefit of this incompetent sister. It further appears that for several years he had strenuously declared that he had not made a will and never would make one. The following morning, June 12th, Cristman had a conference with Angeline, at which the deceased was not permitted to be present, and after the termination of that conference the deceased was called to Angeline's room or bed and informed in effect that he must proceed forthwith to make a will for Eva's benefit, or that she (Angeline), would either destroy or change the will which she had already made. Cristman then went to the home of Mary Shoemaker, a cousin of his wife, and subsequently she came to the Eckler house and was given, or there was delivered to her, presumably to be canceled, a $600 note which Angeline held against her. Cristman appears to have been a party to that transaction. Further conferences and discussions were then had, which resulted in deceased saying that he would execute a will, whereupon Cristman prepared to draw it. Cristman and deceased left the house, and soon returned with a blank form. The will was then drawn in the language as above stated and witnessed by Cristman's wife and his wife's cousin, Mrs. Shoemaker, who had received the gift of the $600 note. The contestants have brought to bear a sharp contest in this proceeding, and much evidence has been introduced, and the question for this court to determine is whether the language above quoted from the will speaks the thoughts and intentions of the deceased, and does that language bring about the result desired by James Eckler.

Cristman was not an attorney, but appears to have been, at least on this occasion, the adviser of the deceased, and his acts, he drawing the will and receiving the whole estate, are subject to the closest scrutiny, and must be removed from suspicion by a preponderance of evidence in the case. The burden is on him to show that this was the act of the deceased, that he understood what he was doing, and that it was his intention to give all of his considerable estate to a stranger in blood, and to deprive those of it who were entitled under the law to take it in the event of intestacy. I think the evidence of the proponent falls considerably short of that standard. Eckler was a man of but little education and had accumulated this fortune by hard labor. His relations with Cristman do not appear, up to the time of making this instrument, to have been of a close or confidential nature. He seemed to have been up-

on good terms with all of his next of kin, excepting, perhaps, three of them, and as to them it does not appear but what he treated them and they treated him in a friendly manner. He was at the time of preparing this instrument upwards of 82 years of age, somewhat feeble, sometimes writing his name, and again making his mark. He knew of the funeral of Crim, his relative and friend, the day previous. He knew that his sister Angeline was expected to die almost any day. He recognized the unfortunate condition of his sister Eva, as well as his own situation. He knew Angeline's wish that a paper be prepared whereby Eva would be cared for from his estate, and it was then that Cristman appeared, and within 24 hours after Cristman had arrived at the Eckler home this instrument was prepared and signed, which contained, so far as Eva was concerned, but a limited allowance or portion from his estate, a trust created simply to "pay all reasonable expenses for support, care, clothing, and funeral expenses," and all the residue of the estate after death was to go absolutely and without qualification to a stranger in blood, to whom was also given the power to limit or enlarge upon the expenses to be incurred for Eva's support and maintenance. It can hardly be said to have been well advised or good management to place the control of this outlay from the estate in the hands of the residuary legatee, whose interests would be adverse to those of the incompetent person.

I am also at a loss to understand why such peculiar language was placed in the will wherein this estate is given to Cristman, "to have and to hold the same to themselves, their heirs and assigns, forever," and then following the trust language mentioned, and subsequently the absolute gift and devise. I do not think the proponent has shown, to the satisfaction of this court, at least, that the alleged will was the free, untrammeled, and intelligent expression of the wishes and intention of the deceased. It is so unreasonable and unnatural, and the opportunities for fraud and mistake so great, that the conscience of the court cannot approvingly say that this will, under the showing, should be admitted to probate, and the heirs and next of kin of the deceased deprived of the right of inheritance and distribution.

Was it the intention of the deceased, and did he believe, that he was simply preparing an instrument—call it a will, if you choose—for Eva's benefit? One witness testifies that he made the declaration to him that he had taken care of Eva, but that he would not make a will; to another, that Eva was to be cared for, and then Cristman was to have the property to take care of; and to still another he declared that he had made sort of a will, and to others that he had not made a will and never would. By this proposed will in question Mr. Eckler wholly deprived his next of kin and heirs at law of his estate, excepting the limited bequest for his incompetent sister's support, and bestowed it all upon a stranger to the Eckler blood, who prepared and drew said instrument.

It is well known that under our law Mr. Eckler would be at full liberty to dispose of his estate to such person or persons as he might see fit. Living or dying, a person is not prohibited from obliging in that respect his passions, prejudices, or caprices, and his will is not to be thwarted or discarded by the demand of any tribunal, whether of law or equity, because such dispositions are by them deemed unreasonable or

prompted by passions, prejudices, or other motives.  Marvin v. Marvin, 3 Abb. Dec. 192.  But when an instrument is prepared as this one was, and the whole estate given to the person, I may say by a few strokes of the pen, who drew the will, and it is then witnessed by the wife of that beneficiary and a cousin, who has just received through the hand of this beneficiary the gift of a $600 note, it then becomes obligatory upon the beneficiary, in order to establish such will and make it effective, to satisfy the conscience of the court that the proposed will is without doubt or uncertainty the will of the deceased.  It is incumbent upon the proponent to show affirmatively that this paper is the expression of the testator's mind and intention, free, voluntary, and original.  Matter of Elster, 39 Misc. Rep. 63, 78 N. Y. Supp. 871.  It is well established that when the surrogate is not judicially satisfied that the will was properly executed, or that it speaks the true intention of the testator, or that at the time of executing it he was in all respects competent to make a will and not under restraint, then the court is bound to pronounce his opinion that the instrument is not entitled to probate. Delafield v. Parish, 25 N. Y. 35; Lee v. Dill, 11 Abb. Prac. 214; Matter of Clausmann, 5 N. Y. St. Rep. 329.

Again, it has been said that when a person of advanced years, and infirm mentally and physically, has made his attorney the principal beneficiary, and it appears that this was contrary to previously expressed testamentary intentions, that the attorney was a draftsman of the will and took an active part in procuring its execution, and that the testator acted without independent advice, the burden is imposed upon the attorney of satisfying the court that the will was the free, intelligent expression of the intention of the testator.  Matter of Smith, 95 N. Y. 517; Matter of Rintelen, 77 App. Div. 142, 78 N. Y. Supp. 1092; Matter of Gallup, 43 App. Div. 437, 60 N. Y. Supp. 137.  The will by a client in favor of his lawyer is viewed with great suspicion by the courts.  Marx v. McGlynn, 88 N. Y. 357.  And the rule should apply with equal force in the case of a layman.  Here the layman assumed to advise Eckler and drew the will, which would put the whole of the estate in his own hands, first as trustee, with powers to some extent undefined, and then as owner absolutely; and hence the rule should exact of him the same line of proof as it would of an attorney in a similar case.  The fact that a beneficiary gives the directions or dictation for the making of a will excites the greatest suspicion against it, and an additional burden is cast upon the proponent to show by the clearest and most satisfactory proof that it is the will of the testator.  Delafield v. Parish, 25 N. Y. 35.

Where a will has been prepared or procured by one interested in its provisions, an additional burden is imposed upon those who seek to establish it.  All circumstances are regarded by the court with suspicion and jealousy, and there must be stronger proof than would else have been required that the paper propounded expresses the free, unbiased testamentary purpose of the alleged testator, and not merely the wishes of the interested beneficiary.  Estate of Peck, 10 N. Y. St. Rep. 698.  If a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court and call upon it to be vigilant and jealous in examining the

support of the instrument, in favor of which it ought not to pronounce, unless the suspicion is removed and it is judicially satisfied that the paper propounded does not express the true will of the deceased. Newhouse v. Goodwin, 17 Barb. 236.

The proposed will is unequal and unjust, as it entirely ignores all of the relatives of the deceased, excepting the dependent sister Eva, and places her in the charge of a stranger to the Eckler blood, a person who then, subject to her support, became the sole beneficiary under the will. I think the proponent in this case is unquestionably called upon to rebut the presumption of undue influence, which necessarily arises upon the facts in this case, and then he should go farther (considering the peculiar language of this will taken in connection with the proven declaration of the deceased) and show that the deceased knew and understood what disposition he was making of his property. The proponent has not satisfied the court in that regard.

It appears from the evidence that the deceased was urged to make a will "to provide for Eva"; but the instrument offered for probate, it seems to me, considering the amount of the estate, falls short of satisfactorily bringing about the result. Her distributive share in his estate would, I think, have been better for her at her age than the provisions in her favor as contained in said instrument. The law of this state as to the making of wills is to be strictly observed in order to prevent frauds and uncertainty in the testamentary disposition of property. It is undoubtedly true that from time to time an honest attempt to execute a will is defeated by failure to observe some requirement, but it is better that this should happen under the proper construction of the law than that the individual case should be permitted to weaken the provisions calculated to protect testators generally from fraud. Matter of Andrews, 162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294. This case to my mind is not free from doubt. I am not sure that James Eckler intended to do what the language of the proposed will as a whole determines shall be done. Considering the great number of wills probated, comparatively but a small percentage is ever disturbed by the court; but upon the showing in this case doubt as to the intention of James Eckler is still in my mind, and uncertainty exists which has not been removed and cannot be by this evidence.

It has been said that while the courts stand between the living and the dead, and seek in all proper cases to carry out the expressed wishes of a deceased person, yet they are not called upon to strain after probate, nor in any case to grant it where stubborn facts or grave doubts exist as to the justice of so doing. The primary object in the mind of Eckler and his sister Angeline was that a written instrument or will be prepared entirely for Eva's benefit, and while absorbed in that did he not lose sight of the disposition of the corpus of the estate? Aptly, it seems to me, we can use the words of Justice Erskine:

"That the protection of the law is in no cases more needed than it is in those where the mind has been too much enfeebled to comprehend more objects than one, and most especially where that one object may be so forced upon the attention of the invalid as to shut out all others that might require consideration."

In the case at bar the chances, not alone of fraud and deceit, but of mistake and misunderstanding is too great to establish a precedent of probate upon the facts disclosed. Where nonrelatives by consanguinity work or press themselves into the affairs of aged and feeble persons of wealth, and the speedy result of that relation is a will hostile to the next of kin and drawn and prepared by the principal beneficiary, I think but few inferences should be indulged in by the court in favor of the probate of such a will. I do not indulge in presumption in favor of this instrument. The facts do not justify and probabilities do not warrant it. I have given this case careful consideration, and am firmly of the opinion that probate should be denied. A decree will enter accordingly. The question of costs and allowances will be determined at the settlement of the form of the decree.

Probate denied.