[4] Upon a consideration of these authorities and from the facts disclosed in the answering affidavits the court fails to see wherein the officer of the Bank for Savings in any manner committed a contempt of an order of this court, or where the rights of the judgment creditor have in any way been impeded, impaired or prejudiced. I have not found it necessary to go into the merits of the entire proceedings, but merely to pass upon the question of the alleged contempt of a mandate of this court.

The motion of the judgment creditor to punish the officer of the bank is denied, with leave to the judgment creditor to apply for the appointment of a receiver of the funds in the control of the bank, which receiver may, in an action brought against the bank, have the rights of the parties adjudicated and determined.

Order signed.

---

### In re DUNN.

(Surrogate's Court, Kings County. March 31, 1916.)

WILLS ☞337—PROBATE—VERDICT BY JURY—SETTING ASIDE BY SURROGATE—STATUTES.

 Under Code Civ. Proc. §§ 968, 970, 999, 1002, 1003, 2538, and 2770, touching trial by jury and new trials, made applicable to the Surrogate's Court by section 2539, and under section 2614, providing that probate of a will shall not be allowed unless the surrogate is satisfied as to due execution, etc., in proceedings for the probate of a will, where, upon submission to a jury of the question, there was verdict that testatrix had testamentary capacity, the surrogate, while he could set aside such verdict upon the recognized legal grounds, could not do so except by also ordering a new trial by jury, according to the ancient right of jury trial that as to any of such questions a verdict is conclusive, that there shall be a motion for new trial of the kind which pertains to cases where a party is entitled by the Constitution or express provision of law to a trial by jury, and that no motion against the verdict shall prevail unless involving the granting of a new trial by jury, since "satisfied," in section 2614, means judicially satisfied, not personally satisfied.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793-796; Dec. Dig. ☞337.

 For other definitions, see Words and Phrases, First and Second Series. Satisfaction of the Court.]

In the matter of the petition of Nellie W. Dunn to prove the last will and testament of Martha Barlow, deceased. On motion to set aside verdict and for a new trial. Motion, so far as it seeks an independent decision of the question of testamentary capacity, denied, and motion for new trial denied.

Harold E. Lippincott, of New York City, for the motion.
Frank Harvey Field, of New York City, opposed.

KETCHAM, S. In a proceeding for the probate of a will, there has been a trial by jury, upon demand therefor, in which were presented the questions of execution, testamentary capacity, and undue influence.

---

By direction of the court, the jury found that the will was duly executed and that it was not procured by fraud or undue influence. Upon submission to the jury of the remaining question, a verdict was rendered that the testatrix was possessed of testamentary capacity. At the close of the trial, the only application of the contestant was that the verdict be set aside and that a new trial be granted. The motion was adjourned for a deliberate hearing, at which no exceptions taken at the trial were presented, and the sole question, as defined when the motion was made, was whether or not the verdict as to testamentary capacity should be set aside and a new trial by another jury be awarded. There was then added, in behalf of the contestants, the assertion that the verdict was not conclusive, and that in its despite the court remained under the duty before admitting the will to probate to inquire into all the facts and circumstances, and to be satisfied, otherwise than by the conclusions of the jury, that the will was genuine and valid in its execution, and that the testatrix was in all respects competent to make a will and was not under restraint.

With this suggestion ingrafted upon it, the original motion divides into inconsistent branches. The moving party's demand for a new trial has no reason for its being, except in the theory that the finding of some jury, now or hereafter, is the sole adjudication upon which probate must be granted or denied. It excludes all right of the surrogate to impose his own determination upon the issues. On the other hand, the prayer that the court shall itself consider the questions upon which probate depends, and thereupon enter its decree, does not seek such new trial, but, on the contrary, would not only avoid the present verdict, but would make another impossible. Hence both of the remedies sought by the contestants cannot be had. If the surrogate shall impose his own judgment upon the issues, in disregard of the verdict, the motion for a new trial must abate.

If the law in its express and manifold provisions for a new trial (C. C. P. §§ 2539 and 2770, and sections 970, 999, 1002, 1003, made applicable to this court) intends that the present verdict, if approved, or another verdict, if required, shall be the basis of the decree, then it becomes impossible for the surrogate to exercise any right or duty of independent inquiry. Which, then, of these two forms of relief, is the only one which the aggrieved party can ask, since he cannot avail himself of both?

The question is of the utmost gravity; for, if this court should now substitute its own judgment for the finding of the jury, there would remain no room to apply the provisions of the Code cited supra which seem to ordain and regulate the motion for new trial.

In support of the claim that the surrogate may now make his decree in disregard of the verdict, there are cited the opinions of Mr. Surrogate Fowler. In re Plate's Will, 156 N. Y. Supp. 999; Matter of Eno, 157 N. Y. Supp. 553; Matter of Dorsey, 157 N. Y. Supp. 662. If the views of the learned judge were in any wise related to the disposition of the matters in which they were pronounced, this court would generally be inclined to bow to them, not only as the fruit-

age of an incomparable erudition, but as the adjudication of a court dignified in its station and its person.

None of the expressions presently to be quoted was, however, other than an incident in an abstract review of the general subject of trials by jury in probate cases, and the disposition of the motion which, in each instance, was then before the court, could not have been affected by the truth or the untruth of the observations upon which the contestants rely. Hence the language of the learned judge, while of profound interest to those who have learned to measure the accuracy and sobriety of his judgments, still lacks all authority save that which is gratefully accorded to the personal reflections of a writer of distinct eminence.

Says Mr. Surrogate Fowler:

"The surrogate is still the only officer authorized to probate wills in this state. The Code yet provides that in any and every probate proceeding it is the surrogate, and not the jury, who must be satisfied of the 'genuineness of the will and the validity of its execution.' Section 2614, C. C. P. When the surrogate is not satisfied with the verdict of a jury rendered in this court upon issues submitted to them in a probate proceeding, it would be against all conscience and precedent for the surrogate to abdicate his most responsible functions and refuse to fulfill his sworn obligations out of deference to a bad verdict of a common jury. In common-law actions or in prosecutions for alleged crimes, according to the course of our common law, I have a profound respect for trial by jury. But a will contest in this court is not a common-law action. At common law no right of trial by jury existed on claims against the validity of testamentary dispositions or in any probate proceeding on testaments. A devise, on the other hand, was only submitted to a jury in ejectments or in some bills of right, or on a devisavit vel non issued out of chancery, and then only because at common law a devise was regarded as a deed of conveyance. The new Surrogates' Code of 1914 wisely fails to provide that the verdicts of juries in contested probates shall be binding on the surrogate unless such verdicts are found in the Supreme Court. This excellence of the new Surrogates' Code, I hope, was not an accident." Re Plate's will, supra.

The learned surrogate again writes as follows:

"By the express terms of section 2614 of the present Code of Civil Procedure, the surrogate remains, even under the new procedure, the exclusive judge of probate. He alone can make a decree of probate. That mandatory section, to which I refer, directs that, 'before admitting a will to probate, the surrogate must inquire particularly into the facts and circumstances, and must be satisfied of the genuineness of the will, and the validity of its execution.' The section now regulating the trial by jury in contested probate proceedings (section 2538, C. C. P.) provides that in probate proceedings the surrogate must make an order directing the trial by jury of any controverted question of fact, if any party appearing seasonably demands such trial. This last-mentioned section must be so construed as to harmonize with section 2614, C. C. P. The jury are not by the new act made judges of probate, but triers of certain controverted facts to be submitted to them by the trial surrogate in probate proceedings. Unless the judge of probate is satisfied with the answers of the jury to the special questions thus submitted to them, it is obvious that the surrogate cannot admit the will to probate if he conscientiously discharges the mandate committed to him alone by section 2614, C. C. P. It would be wrong for the surrogate to ignore his official and personal obligations, because of the findings of a jury, if they were not satisfactory to the surrogate. There is no provision of law which makes the answers or findings of the jury to the questions submitted to them by the surrogate

conclusive per se on the conscience of the surrogate, unless the trial of such issues is had in the Supreme Court. Section 2538, C. C. P.

"In view of the sections of the Code (2614, 2538) just mentioned, it is obvious, I think, that the old practice on a devisavit vel non once issued out of chancery affords an outline for the logical practice to be pursued when the trial is had .with the aid of a jury in the Surrogate's Courts under the new act. If the chancellor was not satisfied with the verdict on the issues submitted to the jury, he directed a new trial or trials, sometimes as many as three." Matter of Eno, supra.

In the remaining case cited supra, the same view is presented without argument.

The section of the Code from which alone Mr. Surrogate Fowler derives his conviction that the surrogate may override a verdict, without further trial, is as follows:

"Before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution. If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will and not under restraint; it must be admitted to probate as a will valid to pass real property, or personal property, or both as the surrogate determines, and the petition and citation require, and must be recorded accordingly. The decree admitting it to probate must state whether the probate was or was not contested." C. C. P. § 2614.

Provisions according trial by jury before the surrogate, pursuant to a demand therefor, are as follows:

Section 2538 provides:

"In any proceeding * * * for the probate of a will in which any controverted question of fact arises, the surrogate must make an order directing the trial by jury of such controverted question of fact, if any party appearing in such proceeding seasonably demands the same. The surrogate in such order must direct that such trial be had either before himself and a jury, or at a trial term of the supreme court to be held within the county, or in the county court of the county."

The section then proceeds, with respect to trial in a court other than the Surrogate's Court, as follows:

"The verdict, if not set aside by the judge before whom the question is tried, shall be certified to the Surrogate's Court by the clerk of the court in which the trial took place, and shall be conclusive except upon appeal."

Section 2539 provides, with respect to the trial before the surrogate and a jury, that:

"The trial shall proceed in the same manner as if such trial were had in the Supreme Court at a trial term thereof held in and for the county of such surrogate."

And the section closes as follows:

"The provisions of this act relating to trial by the court and a jury, or to a motion for new trial, shall apply to Surrogates' Courts and to the proceedings therein so far as they can be applied to the substance and subject-matter of such proceedings without regard to form, but the surrogate shall have no power to set aside a verdict or to grant a motion for a new trial in any proceeding in which the trial took place in a court other than the Surrogate's Court."

Section 2770 provides:

"Except where a contrary intent is expressed in, or plainly implied from the context of, a provision of this chapter, all other portions of this act, and the general rules of practice apply to Surrogates' Courts and to the proceedings therein, so far as they can be applied to the substance and subject-matter of a proceeding without regard to its form."

The thought which must dominate this discussion is that the legislation by which the duty of presiding over jury trials in probate cases was vested in this court cannot prevail unless it is found to have provided a complete assurance to litigants in such cases of an adequate and serviceable chance to possess and enjoy all that is traditionally inherent in the right of trial by jury.

Whether in a probate case in which questions arise of which a party concerned has the constitutional right to that mode of trial, or in a like case in which such right is vouchsafed by "express provision of law," the thing which the law has proposed to give is a real trial by jury, with all the safeguards which alone make that mode of trial precious.

The grant of this right is accompanied by the provision that:

"Every decree of a Surrogate's Court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained." C. C. P. § 2550.

Since a decree in probate is thus intended to exclude all further litigation in another court of the questions laid by such decree, it results that unless the procedure in this court which the new act brings into being affords a fully matched equivalent for the right, which has been long enjoyed and which the new act abates, the scheme of legislation must be offensive to human rights and must come to ruin. No construction of these statutes is tolerable which shall impress upon them such effect.

The question must be regarded in its proper limitations. It has to do only with a probate case in which the trial is had in this court upon demand. It must be confined to a case in which there is a conflict of evidence obviously requiring submission of the fact to a jury.

It must be assumed that the argument in behalf of the right of a surrogate to ignore the verdict and to make a decree in contravention thereof means that such right exists whenever the court is confronted by what Mr. Surrogate Fowler calls "a bad verdict," that this function of the court is something apart from the duty of a trial judge to set aside a verdict and grant a new trial, upon grounds which are known and restricted, and that it involves a power not only of reversing the pending verdict, but of forbidding any further verdict.

When in the present writing a verdict is referred to as "conclusive," it is meant only that it is conclusive unless set aside on motion or reversed on appeal.

The legislative scheme, if for a moment considered apart from section 2614, discloses a purpose to recognize the existing right of trial by jury, and to preserve it by an efficient substitute. Where land is affected by the will, the right which the new act must maintain in a new guise is constitutional. In other cases the right which must be

recognized and confirmed is that which has long been accorded by "express provision of law," as in former sections 2588 and 2653a.

The only procedure under which either of these rights was assured, the form in which they were enjoyed to the utmost, is now taken away. The enactment which thus extinguishes the only means by which these rights were once asserted cannot prevail unless it affords every enjoyment which was available under the condition which it has abolished.

There is no such thing as a right of trial by jury unless there is embodied in it the right to another trial by another jury in the event that any verdict shall be set aside. In all that is secured by either constitutional or statutory grant, the only thing worth having is the right that the case shall not be determined otherwise than by a jury. What is the use of the right, unless when one verdict shall fail there must be another?

Under stress of these considerations, every art of construction must be zealously employed to give to this new act efficiency and not defeat, order and not disaster. Courts must be loyal and astute in the endeavor to reach a reading which will avoid collision with the Constitution, and must be equally anxious to escape a finding that the substitute for a statutory right is a sham and a mockery.

The pre-existing right would not be fulfilled in the new law if, after a verdict, whether the first or the fifth, the court could discard the jury's finding and, without submission to another jury, assume to itself the last disposition of the issue.

The statutes above quoted, which assume to continue in another form the ancient method of trial, still regarded apart from section 2614, clearly profess to preserve the motion to set aside the verdict and are equally solicitous, in case of its vacation, to make certain that the issues shall remain subject to disposition by a new jury. Provisions of all the Code relating to trial by the court and a jury, or to a motion for a new trial, are made applicable to Surrogates' Courts, so far as they can be applied to the substance and subject-matter of such proceedings without regard to form. Section 2539.

The "act," the provisions of which are thus by absorption made a part of section 2539, is, of course, all the act known as the Code of Civil Procedure (section 3344), as amended. This appears beyond dispute in the title of the new act, viz., "An act to amend the Code of Civil Procedure." It also appears throughout the new chapter 18 by numerous references to "this act," which can have no meaning unless applicable to the whole act affected by the amendment.

Among the provisions thus wrought into chapter 18 are sections 968, 970, 999, and 1002.

Section 968 assures a jury trial in cases substantially of the kind in which there was a preconstitutional right to this method of trial.

Section 970 then treats of certain other "issues of fact" which shall be tried by jury. These issues are those which arise in an action not specified in section 968, and are described as issues as to which a party is entitled "by the Constitution or by express provision of law to a trial by a jury." Section 970 ordains and defines their method

of trial, and provides that the finding of the jury thereon "is conclusive in the action unless the verdict is set aside, or a new trial is granted."

Section 971 is concerned with cases in which a party is not entitled to jury trial as a matter of right. As to these there is no provision that the verdict shall be conclusive. The section obviously treats only of the cases in which the jury verdict is taken for the information of the judicial conscience. In these, of course, the court may treat the verdict as evidentiary, and may disregard it.

Such cases are in their essence triable by the court, and the trial by the court is still in progress, while, as a mere feature of such trial, the inquiry of the jury is proceeding. The court can ignore the verdict in whole or in part, can take the verdict of another jury, and reject it, and can take evidence to eke out or impair the finding of any of the successive juries. The procedure in these cases comes down from past generations, without touch of innovation. It never has had anything to do with the traditional right of jury trial. Jury trials by right and jury trials within the discretion of the court always presented sharp and recognized distinctions, and it has never been heard that the absolute right could be satisfied by the award of the wholly discretionary and tentative trial.

Much learning on the subject is found in Carroll v. Bullock, 207 N. Y. 567, 101 N. E. 438, and its tributary authorities.

The historical background of section 971, and its limitation to cases in which there is no right to jury trial, make it plain that when sections 2538 and 2539 supervened upon both sections 970 and 971, and expressly dealt only with cases in which the right of jury trial either existed or was by their own terms imposed, the legislative thought was that as to the effect of the verdict the new procedure was to be subject only to the section 970, which made verdicts conclusive.

Then come sections 999 and 1002, containing provisions for new trial. These are doubtless available in cases tried before a jury without right, but to a partial extent only, since in these cases it is within the discretion of the court to disregard the verdict. As to the cases in which the right to the jury trial exists, the two sections last cited affirm that an element of that right is the further right that the last determination in the cause shall be by a jury. In section 999 this appears in the significant provision that the motion thereby authorized is not alone to set aside the verdict, but also to grant a new trial. In section 1002 the same purpose is revealed, since the only motion contemplated is for a new trial.

We need not stay to demonstrate that the "issues of fact," referred to in section 970, are so manifestly allied to the "controverted questions of fact" of section 2538, that the provisions of the older section directing the procedure for the trial of issues must be applied to the trial in the Surrogate's Court of the "controverted questions of fact" of section 2538, and that the provisions of the older section directing the procedure for the trial of "issues" must be applied to the trial in the Surrogate's Court of the "controverted questions," nor will it be doubted that the provisions of section 970 as to issues in the trial of "actions" in like manner apply to "proceedings" in this court.

The legislative device, by which in one part of a statute other parts are embodied and made applicable so far as substantially possible, is old and has been applied with intelligence and safety for generations. The phrases last quoted from sections 2539 and 2770, by which other portions of the act, so far as possible, are made applicable to proceedings in Surrogates' Courts, were not invented in 1914. Before that they were found in former section 2538. That section was constantly availed of with a freedom which well accorded with its sensible and business like spirit, and its numerous applications in the cases will relieve any qualms which the sciolist might otherwise suffer as to the legislative intent of the sections cited. They must mean only that all rules in the Code touching actions will govern proceedings in this court, and that all rules therein made to control the trial of issues of fact will, so far as applicable, govern the trial of controverted questions of fact in this court.

We have, then, a consistent system defined in sections 968, 970, 999, 1002, and 2539 of the Code. It intends that all the questions of fact in probate cases as to which a party is entitled to jury trial by Constitution or by express provision of law are the subject of such trial; that such trial is to be surrounded by all the incidents necessary to make such method of trial an effectual reproduction of the ancient right of trial; that one of these express provisions of law is contained in section 2538; that as to any of these questions, when tried, the verdict is conclusive; that there shall be a motion for a new trial of the kind which pertains to cases in which a party is entitled by the Constitution or by express provision of law to a trial by jury; and that no motion against the verdict shall prevail unless it involve the granting of a new trial by jury. No ingenuity can escape the manifest expression and intent that whatever shall be the nature and effect of a verdict in any case, wherever tried, shall be the nature and effect of a verdict reached before the surrogate.

If the foregoing deductions were open to doubt, there would remain a most convincing demonstration of the intent of sections 2538 and 2539. It is provided in section 2538 that, if the trial shall take place in a court other than that of the surrogate, the verdict shall be conclusive. In the succeeding section, this provision is made applicable to the Surrogate's Court and to the probate proceeding for every purpose. Here it is written that all the provisions anywhere found in the Code of Civil Procedure by which the Supreme Court may be aided or controlled are equally applicable for the guidance or constraint of the surrogate in a like case. No other result can be derived from the direction in section 2539 that "the provisions of this act relating to a motion for a new trial" shall apply to the Surrogates' Courts and to the proceedings therein.

The text of the statute is sure and imperative, and its spirit, if regarded, would confirm it. If the language were doubtful, could it be suggested that the Legislature intended an inconsistent mode of procedure in these several courts? Even to clear an ambiguity, could a construction be adopted which would extort from the statute an intent that when a county judge is also surrogate, and has presided over a

jury trial of a will case in the former relation, he must entertain a motion for a new trial, and, upon granting it, must direct the new trial; but that, if the same officer had tried the same case in the Surrogate's Court, he might have ignored the verdict and refused to allow another?

It may therefore be said with confidence that the only kind of jury trial in this court which is contemplated in the language of sections 2538 and 2539 is the one in which the verdict is conclusive, and that upon its vacation there can be no disposition of the issues except at a new trial by jury.

The further endeavor will be to show that this conclusion is not impaired by a just construction of section 2614, and that any duty of personal consideration of the questions pertaining to probate, which is prescribed by that section, is obviated in any instance in which the statute ordains another method of investigation.

Against this, Mr. Surrogate Fowler says:

"When the surrogate is not satisfied with the verdict of a jury rendered in this court upon issues submitted to them in a probate proceeding, it would be against all conscience and precedent for the surrogate to abdicate his most responsible functions and refuse to fulfill his sworn obligations out of deference to a bad verdict of a common jury." Matter of Plate's Will, supra.

This has a solemn purport, if justified; but, of course, it has no purport if the only construction of which section 2614 is capable is found to be that the surrogate is required to exercise the duty of being satisfied by the searching of his unaided conscience only when the statute has not supplied another method of reaching the same result.

Under the new system, a verdict in the Supreme Court or the County Court is conclusive. Not only is this expressly declared in the statute, but it is asserted by Mr. Surrogate Fowler. There is, then, one event in which the section means that the surrogate will become satisfied by the lawful duress of a verdict and in no other fashion. This alone imposes upon the words which require him to be satisfied a significance which, if once applied, may well be general and permanent. No longer can these words be said to inevitably require independent and obstructive processes of mind. Their effect is now seen to be the same as if in their place it was said:

"The surrogate must be satisfied by the use of his mind of the facts essential to probate, unless such facts shall be determined by a verdict, and in that case he must still be satisfied, but only by the force major of the verdict."

Sections 2622 and 2623 of the former Code contained all that is now found in section 2614. Under these, there were many instances in which the surrogate was under a judicial need and duty to yield obedience to the yoke of a determination not his own and to find himself satisfied, only by rejecting his own conviction and adopting the decision of others.

How, except by compulsion and surrender, did the surrogate formerly become satisfied when, upon an absolute reversal of his decree, the cause was remitted to him with the direction that the same be disposed of according to the satisfaction of the appellate court? This

has occurred whenever, upon conceded facts, the conclusion of the court below has been overruled on appeal.

A convenient instance is supplied by the cases in which the surrogate, upon the face of a will, has found that it was not executed "at the end thereof," and the appellate court had otherwise decided. In such cases, what sworn obligation is left except that of submission?

Before the Revision, if the decree of the surrogate, made after he had become satisfied, was reversed, a new trial by jury was ordered. If, upon such trial, the verdict was opposed to the surrogate's finding, was there any individual satisfaction or process of mind whatever on the part of the surrogate, when he came to make the decree, which the verdict obliged him to make?

If, under the law as it was before 1914, the surrogate of New York county should have directed a trial by jury in the Supreme Court of a case of probate, would he not have abdicated his most responsible function and forgotten his sworn obligation, if any such existed? Such direction would then have been a voluntary desertion of any supposed duty to become satisfied by personal volition, for it was provided that a verdict in such trial was conclusive. Moreover, if a trial were had under such direction, the conclusive verdict would supply another instance in which the sworn obligation would vanish, and the only function remaining would be that of becoming satisfied by the acceptance of the will of others.

In these illustrations, arising before 1914, the reason that the surrogate was not permitted to exercise his own judgment, when the decision of another court contrary to his own was certified to him, can only be that the section commanding him to inquire particularly and to be satisfied was found in pari materia with other sections which imposed upon him duties totally inconsistent with any interpretation which would require that in every decree in probate he should record his personal satisfaction.

In each of these instances, the word "satisfied" received a construction by which it was made to mean "convinced by his own will, if he is left without help, and convinced by another court if, by statute, such court is required to instruct him."

In the case stated supra, in which the supposed question was as to whether, upon conceded facts, the will was duly executed, the surrogate was, as he still is, under the dominion of former section 2585, reproduced in present section 2764, which required that:

"The court below shall enter the judgment or order necessary to carry the determination of the Appellate Division into effect."

The surrogate was again subject, in the same supposed case, to the provision that upon remittitur from the Court of Appeals he was under the duty of recording the judgment of the appellate court (Code, § 194), and that such duty excluded every other.

In the second illustration, in which it was supposed that the surrogate was confronted by a verdict which set aside his own finding, the proceeding was subject to former section 2588, and it was uniformly held, and was recognized by constant practice, that, without express

regulation of the Code, the procedure was controlled by section 2585, so that upon certificate of the result the surrogate was bound to enter a decree accordingly. Matter of Campbell, 48 Hun, 417, 1 N. Y. Supp. 231; Matter of Laudy, 35 App. Div. 543, 55 N. Y. Supp. 98.

The third supposition deals with the case in which the surrogate of New York county might have directed a trial by jury in the Supreme Court. Again, there is found a condition in which the only way by which the surrogate was suffered to exercise the duty of being satisfied was by abdicating any use of his mind.

There had thus grown up before 1914 a statutory and judicial definition of the word "satisfied," when found in the language from which section 2614 was taken. Whatever the word meant in other surroundings, in this language it came to mean that the surrogate was to be satisfied in the manner in which the law required him to be satisfied whenever the law went to the trouble of telling him to be satisfied.

It was this construction which was absorbed in the act of revision. The word, as well as the phrase which contained it, came into the new statute charged with the force which it had gathered.

It would not, ordinarily, be of real importance to question whether in this process the language of former sections 2622 and 2623 was regarded as itself expressive of the sense thus derived from it, or was bent from its natural meaning by the powers of construction. But the inquiry should be pressed from a just regard for the weight of the views against which this opinion is set.

A statutory direction that a judicial officer shall be "satisfied" as to a matter of fact can only intend that he shall reach conviction by the employment of normal methods of investigation. It contemplates nothing but judicial behavior. It is not an invitation to the caprice or vanity of a man. It is the command of the law, addressed to the loyalty and humility of its minister. It cannot mean that, when the law has become satisfied, the voice of the law may refuse its service. The surrogate need only be "judicially satisfied" Cooper v. Benedict, 3 Dem. Sur. 136; Matter of Eckler, 47 Misc. Rep. 320, 95 N. Y. Supp. 986. In all the matters which make for probate appear, "he had no discretion, but was required to admit the will to probate." Matter of Davis, 182 N. Y. 468, 475, 75 N. E. 530, 532.

Instances are many in which the satisfaction of a judge as to a fact must precede his act. It is not rash to say that in every such case the judge must do the act and record his satisfaction of the fact whenever his original conviction is overruled. For these instances in the Code of Civil Procedure, see sections 636, 2054, 2310, 2323a, 2347, 2441, 2446, 2449, 2471a, 2905, 2965, 2971, 3163.

Moreover, in section 2614 and its predecessors, the duty of the surrogate to be satisfied has not been left without impressive exposition in the context. In all these sections the manner in which the task of being satisfied must be discharged is prescribed with a precision and fullness which leave nothing except the ordinary responsibility attendant upon a judicial act.

"If it appears to the surrogate that the will was duly executed," etc., it must be admitted to probate. C. C. P. § 2614, former section 2623.

Can it be questioned that the act of satisfaction and the appearance of the fact are the same act? That they are is affirmed in Matter of Davis, supra. Can the court see the fact and remain unsatisfied?

Numerous authorities acquiesce in this construction of the sections prescribing that the surrogate must be "satisfied." They contain no argument on the point and seem to have proceeded without recognition of any doubt.

The language by which this duty is prescribed has been specifically construed. In Matter of Bartholick, 141 N. Y. 166, 36 N. E. 1, the will was admitted to probate by the surrogate as a will of both real and personal estate. An appeal was taken by one who described herself only as an heir at law. No next of kin appealed. The decree was reversed, and a new trial was granted. Upon the trial, the verdict was against the validity of the instrument. When this result was certified to the surrogate, he was asked to maintain his decree so far as it admitted a will of personal estate, upon the ground that the finding in that regard was untouched by the verdict. This he refused to do, and made a decree denying probate generally and setting aside the former record in probate. That in this act he exercised no responsibility, but proceeded only under the constraint of the verdict, appears from his statement that he entered the decree in the form mentioned because the Supreme Court had reversed the former decree entered by him without limiting the reversal to the will as a will of real estate, and that he therefore considered himself precluded from limiting the decree to the real estate as requested. Judge Peckham says:

"The finding of the jury, standing as it did in full force, was the exact equivalent to a finding by the surrogate to the same effect. Upon such a finding based upon evidence legally taken, has the surrogate any legal right to admit a will to probate for any purpose?"

And the opinion proceeds to deny that any such right exists in the statute which directs that the surrogate must be "satisfied."

The surrogate's decision was also sustained upon grounds not material to the present controversy, but with them was not only the expression quoted supra, but the clear holding that the surrogate had no right to set up his own convictions against a finding of a jury, even though its adjudication as such did not embrace the issue as to personal estate. It is impossible not to see that the court held that it would have been wrong, if the surrogate had insisted upon being satisfied with his earlier judgment when the jury, however irregularly, had overruled him.

The surrogate is fully persuaded that the verdict of a jury in a probate case tried in this court, upon the demand of a party, is conclusive; that while the court is under the serious responsibility of setting aside such verdict, if upon grounds well recognized it should not endure, there can be no interference with a verdict unless it be accompanied by an order for a new trial by jury; and that, above

all, if the verdict shall not be set aside there is no power in the court to proceed to decree in defiance of the finding of the jury.

The motion, so far as it seeks an independent decision by the court of the question of testamentary capacity, is denied.

The motion for a new trial must be denied.

The case was tried with commendable fairness and moderation. It was argued without appeal to passion, prejudice, or other illicit emotion. It was submitted to the jurors with due admonition. There was before them evidence amply sufficient, if accepted, to justify their finding, and there is no sign that their verdict was affected by other than fair and rational considerations.