---

## In re DORSEY'S WILL.

(Surrogate's Court, New York County. March 5, 1916.)

1. WILLS ☞333, 337—SURROGATES' COURTS—PROBATE PROCEEDINGS—PRACTICE.

Code Civ. Proc. § 2770, making the general rules of practice apply to Surrogates' Courts so far as they can be applied, except where a contrary intent appears from the Surrogates' Law, makes applicable to a contested probate proceeding tried with a jury section 998, authorizing motion for new trial on the minutes of the judge without making a case, section 1185, providing that where the case presents only questions of law the judge may direct the jury to render a verdict subject to the opinion of the court, and section 1233, providing that a motion for judgment on special verdict may be made by either party, and must in the first instance be heard and determined at a term held by one judge.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 788, 789, 793–796; Dec. Dig. ☞333, 337.]

2. WILLS ☞333, 337—SURROGATES' COURTS—PROBATE PROCEEDINGS—PROCEDURE.

Motions for judgment on the findings of the jury on the trial of contested probate proceedings, and for new trial, should not be made or decided immediately on rendition of verdict, but at a later date, in order to give the judge time to consider the questions involved.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 788, 789, 793–796; Dec. Dig. ☞333, 337.]

3. WILLS ☞316—SURROGATES' COURTS—PROBATE PROCEEDINGS—PROCEDURE.

A trial with a jury in a contested probate proceeding is not a trial at law, but an inquisition.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 742–749; Dec. Dig. ☞316.]

4. WILLS ☞337—SURROGATES' COURTS—PROBATE PROCEEDINGS—PROCEDURE.

Under Code Civ. Proc. § 2614, providing that before admitting a will to probate the surrogate must be satisfied with the genuineness of the will and the validity of its execution, a verdict against the weight of evidence must be set aside by the surrogate of his own motion.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793–796; Dec. Dig. ☞337.]

Proceeding to probate the last will and testament of Fanny M. Dorsey, deceased. Motion for judgment on directed verdict in favor of will granted, and motion for new trial denied.

Phelan Beale, of New York City, for proponent.
Bertrand L. Pettigrew, of New York City, for contestant.

FOWLER, S.  The trial of the controverted questions of fact (put to the jury by an interlocutory order dated November 1, 1915, based on the contestant's objections demanding a trial by jury of such controverted issues) came on for hearing before me and a jury, duly impaneled and selected for the purpose, at this Trial Term of this court. At the close of the evidence I directed a verdict on all the questions so put to the jury, substantially in favor of the will.  I then directed mero motu the proponent to move, pursuant to section 1233, C. C. P., for judgment at a late day in the term on the answers of the jury (duly subscribed by the foreman and the jurors), and at the same time I directed the contestant to move for a new trial at a day deferred on the minutes, pursuant to section 998, C. C. P.

[1]  I believe this is the proper practice, and that section 1233, C. C. P., should be held to apply to verdicts rendered by a jury on the controverted issues of fact put to them in this court, although, as I pointed out in Matter of Plate (Sur.) 156 N. Y. Supp. 999, the answers of a jury to questions are not a special verdict, and not a general verdict.  But they more nearly resemble a special verdict, as defined by the Code, than a general verdict.  The Code, to which we are referred in gross for guidance by the new Surrogates' Law, seems to contemplate only two generic kinds of verdict, and in this respect it is faulty.

It is necessary that the practice, on trials with the aid of juries in the courts of the surrogates for this county, should be speedily settled upon a rational basis.  In my judgment, both of the sections of the Code indicated apply to trials with juries in this court for reasons I shall hereafter state at length.  One other section also applies to such proceedings, section 1185, C. C. P.  When the trial of an issue by a jury presents only questions of law, the judge may direct the jury to render a verdict subject to the opinion of the court.  In that event the motion for judgment may be made by either party and must be made at a term of the Appellate Division of the Supreme Court.  Section 1234, C. C. P.  In most of the courts of the surrogates, especially those in the rural counties of this state, jury trials never have taken place, and in all probability such trials never will take place; the surrogates of such counties electing to send such matters to the Supreme Court, as they may lawfully do.  We shall get no aid on the proper practice from those counties.  But in this great county it is becoming common, in the smaller estates more particularly, to demand trials by jury in contested probate proceedings.  Too many result in settlements, the fear of a trial by jury on wills is so great.

Thus it is essential that the practice in such proceedings with juries should be speedily settled in this county and the sections made applicable to trials by jury by section 2770, C. C. P., of the new Surrogates' Law determined.  When I concluded that I ought to take my part in the jury business of this court, I found it necessary to determine what sections of the Code were made applicable to trials by jury. There had been up to February, 1916, but 20 trials by jury since September 1, 1914, and the practice was not altogether uniform, nor, with exception of the last trial, such as I could follow.  Out of the 20 jury

trials in all under the new law 9 verdicts had been directed by the surrogate. The percentage of verdicts against wills was very much greater than the percentage of rejected wills under the old law. Out of the 11 issues left to the jury, there were 4 disagreements, making 7 cases actually decided by juries in this court in practically 1½ years of court work.

[2] That a motion for judgment should not now be made or decided immediately on the rendition of the verdict, I believed when I deferred the motion in this proceeding to a later day. The practice of the employment of juries in this court is so novel that, unless we proceed graviter et lente, we may seriously obstruct the rights and powers now regulated by the statute of wills. I know of no such formidable attack on the testamentary power, venia testandi, as the new Surrogates' Law affords, if the trials by jury in the courts of the surrogates are conducted by judges and juries not impressed by the wisdom of the statute of wills, the gravity of the situation, the importance of the testamentary power to society at large, and the clear right of a competent testator to do what he pleases with his own. The slightest weakening on any of these points by judge or jury will result, 9 times out of 10, in injustice too grave to be lightly contemplated. It is for this reason that on challenges to the favor on the selection of juries in this court, in contested probates, every one of those drawn should, before he is accepted as a trial juror, be interrogated as to his attitude to the statute of wills and the abstract right of testators to do with their own as they please. This has not been the practice, and yet it is common knowledge that many persons in this commonwealth do not approve of the statute of wills, or of testamentary dispositions differing from the statute of distributions. Such are not competent to serve as jurors in contested probates under the new law.

It may be said that any error in the trial of contested probates can be corrected by an appeal. What an idle and inconsiderate suggestion! Let me illustrate by an example: The father and breadwinner comes to die; he leaves the accumulation of a laborous life, $50,000 (this is far above the average of estates), and surviving him a widow and 5 or 10 children, some of them infants. His will leaving all to the widow is contested, perhaps by a guardian (appointed by this court). After long delay the contested probate comes to trial with a jury in this court. The verdict of the jury is against the will. There has been a mistrial, patent, open, and notorious. Where is the money to come from to correct the iniquity on appeal? The family are starving; all need their money now. So the will of the dead man, wise and prudent as it is, is ignored by the parties. The will fails, the statute of wills is defeated, and the last wishes of the dead, which ought to be so solemn to all right-minded men, are ignored. Only the guardian has profited in the case. It is the people of the poorer sort who are going to be the victims of such malpractice, ignorant practice, or want of skill on the part of myself or the jury. It is for this reason, and in order that no blame should lie at my own door in this matter, that I directed the motion for judgment on the findings in this case to be

deferred until I could consider the matter afresh with proper deliberation.

The practice of moving for judgment in this court at a deferred day is consistent with the old practice in this county and in all courts of this character, as it gives ample time for that fuller, deliberate and requisite consideration on the part of the surrogate, who remains the exclusive judge of probate under the new law, and who must be satisfied in his conscience, pursuant to section 2614, Code of Civil Procedure, before the law allows him to enter a decree of probate based on any verdict. Unless he is careless or unmindful of his main official obligation, he must, in my opinion, take time before acting on the verdict. By some delay in re-examining the case before proceeding to decree of probate the chances of error will be lessened.

My own poor experience counts for something as to the great advantage of full and long reconsideration before proceeding to a decree of probate. Under the old law, with the aid of eminent and careful counsel employed, I have without juries decided many more contested probates than any of my predecessors, some of them involving months of time and millions in amounts. Owing to the assistance I received from counsel and the time and care bestowed, in only a very few instances were there any appeals. The judgment was satisfactory to the parties. In none was there a reversal. It is only by equal diligence and care, with the assistance of counsel, that I can hope to avoid grave errors on my part in probates carried on with the aid of juries. It is for this reason that I directed the motion for judgment on the findings to be deferred until I could consider further this matter as fully as its importance and novelties dictated.

The cross-motion for a new trial on the minutes, at a deferred day, is also essential, in my judgment, to the due administration of justice in this court under the new procedure. The record can then be deliberately inspected and considered. There is no other case tried with a jury which requires more readiness, technical skill, and ability on the part of the trial judge than cases tried with a jury on the validity of wills. The truth of this will be perceived if we reflect that the common law of evidence has been made mainly in two classes of jury cases—crimes and ejectments involving the validity of wills. I am free to confess I feel very unequal to the novel and inadequate methods of trial now prescribed for this court.

It has been said by a justice of the Supreme Court of ripe and valuable experience that the new Surrogates' Law is not a workable act. But on this point I have no opinion. I shall give it the most favorable construction I can. That is a duty incumbent on every minister of justice. The frequent errors, on the part of the ablest common-law judges, in ejectments involving wills, was a strong argument for the retention of the three trials formerly allowed in ejectments. Under the new law we are confronted, not only with the difficulties confronting the older judges, but with new difficulties on the rules of evidence. I will mention two which occur to me. Under present section 2757, C. C. P., errors in the reception or rejection of evidence are made of no particular account in trials in Surrogates' Courts, yet if a trial

with a jury is according to the course of the common law, any admission of evidence likely to mislead the jury or injure a party is fatal to the verdict. Which of these sets of rules now applies? Is section 2757 now repealed by implication, or is it to govern jury trials?

There is another difficulty about the application of rules of evidence in this court. Formerly the hearing at the probate audience was an inquisition by the surrogate as to the testamentary res, and the witnesses, known as surrogates' witnesses, were the surrogates' very own, and not the witnesses of the parties. The sections of the statute requiring surrogates' witnesses to be called and examined are still, in substance, continued. Section 2611, C. C. P. The application of the revised section relative to surrogates' witnesses to a genuine trial by jury would make nonsense of every rule regulating evidence on trials by jury at common law. The law about surrogates' witnesses was originally directed to an ex parte inquisition. Surrogates' witnesses are absolutely inconsistent with trials conducted according to the course of the common law. The surrogates' witnesses would not be the witnesses of the real parties to the contention, nor are such parties bound by their testimony. Yet such witnesses may still be called before the jury without the action of any of the real litigants. If so called we should have two sets of witnesses testifying before the jury, one interrogated on the part of the surrogate, and neither witness nor surrogate bound by any rule of evidence known to the common law. How could such a trial be carried on according to the course of the common law? Lord Mansfield, Chief Justice Shaw, or Chief Justice Spencer himself—the greatest of common-law judges—could make nothing out of such an absurd state of things. It is for such reasons I directed a motion for judgment on the findings of the jury to be made at a day deferred.

[3] The new manner of probate, allowed by the new Surrogates' Law, is a complete bouleversement of all prior principles of probate law and of the common law as well. A former probate proceeding was an inquisition, committed to the surrogate as a probate judge, and his inquiry concerned that res incerta, a testamentary script only alleged to be a will. To such an inquisition only a negation can be interposed. But on the inquisition of probate, by custom, certain affirmative pleas were of late years permitted to be interposed in probate courts. These were very few. On these permitted pleas there was a trial allowed, but the trial was conducted, as all the better authorities of this state show, according to the course of the civil law, formerly in theory dominant in courts of probate as in chancery. The new proceeding with a jury in this court is not a trial at law. A trial at law always concerns a res certa, or thing or right in esse. It never concerns a thing in posse only. There is no instance at common law of a trial over a res or right not in esse. A will is not in esse until probate. Before that it is only a script, or piece of paper, a thing in posse.

To regard the inquisition with a jury in this court as a trial at law is an absurdity and crass ignorance, and contrary to all principles which underlie common law procedure. Consequently the function of

a jury in this court, in so far as the debatable res or unauthenticated script on paper is concerned, remains an inquisition in our system of jurisprudence, and not a trial at law. In so far as the pleas are concerned, commonly called affirmative objections, viz. fraud, duress, and undue influence, the issues are of fact, and the trial of such issues, apart from factum, is possible according to the course of the common law, which still regulates in this state all issues submitted to juries. But to extricate from confusion the two sets of conflicting principles applicable to the new compound proceeding, and to apply with correctness the conflicting rules of evidence related to separate and opposed principles of law, is a labor of magnitude. It was for this reason that I directed a motion for judgment on the findings to be made at a day deferred, so that I might inspect the record with proper circumspection.

To resume more practical considerations: Juries are much confused by the mixed questions of law and fact which the surrogates of this county are compelled to put to them by the new Surrogates' Law in contested probate proceedings where juries are employed. At common law the issue for the jury is always sharp and defined. The verdict is guilty or not guilty, for defendant or for plaintiff. The jury fully understands a single issue. But here in this court the issues in probate procedings are many, and the jury must have the whole statute of wills clearly put to them in the judge's charge before they can decide correctly. Every conceivable application of the statute of wills which bears on the case must be explained and placed before the jury, lucidly, correctly, and in untechnical, simple English. To convert technical propositions into untechnical phrase requires the training of a master. If any Latin or technical phrases are used in the charges to the jury, it is a valid ground of exception and fatal to the verdict. It was for this reason I directed a motion for a new trial on the evidence at a day deferred.

[4] A verdict against the weight of evidence must be set aside by the surrogate of his own motion or he is highly culpable, for it is he who remains the sole judge of probate under the law, and the verdict is solely in aid of his conscience under section 2614, C. C. P. Unless the probate judge, in contested probates in this court, has the jury well in hand, there will be a mistrial. If he is too obsequious, subservient, or deferential to juries, and leaves to them a single issue which he should decide himself, there will be a mistrial. If the judge refuse to charge the jury when duly requested on the most involved proposition of the law of wills involved in the case, there will be a mistrial if the request was timely. It is for this reason that I directed a motion to be made at a day deferred for a new trial on the minutes.

But it may be said by thoughtless men that the forms of action allowed by the old Code, particularly old section 2653a of the former Code, worked well and was much the same as the present practice in contested probate proceedings under the new Surrogates' Law. But to so affirm is both careless and undemonstrable. They resemble each other no more than light and darkness or black and white resemble each other. Under section 2653a there was an action over

a legal res in esse as I have explained. In such action there was a great and fundamental presumption prescribed by statute in favor of res or will in esse. That presumption was at the base of the entire trial of the action. It permeated and regulated the trial. Onus probandi in the action under section 2653a was skillfully regulated by the statute. Indeed, the section 2653a, as often amended, finally became a tolerably complete code of procedure and regulation in itself. Such regulation was highly essential to a type of action unknown to the common law. How the guardians of property could ever have been induced to think that the present jury proceeding in the Surrogates' Court in contested probates is a fair substitute for that section I cannot see. They should have waked up and put their armor on before it was too late.

I animadverted on section 2653a in my decision in the contest on Mr. Eno's will, 157 N. Y. Supp. 553. I have carefully examined many of the records and cases tried under section 2653a (old Code), which was far more perfect legislation than the present Surrogates' Law now regulating jury trials in this court. In many of the trials, pursuant to that section, the functions of judge and jury were misunderstood or confused, as the law reports show, and the practice, at best, was far from ideal or according to common-law precedent. It is these precedents which regulate all trials by jury in this state. Whether old section 2653a ever worked justice, as compared with the still older law on wills, I much doubt. But that section has now, in any event, disappeared unmourned in the limbo of curiosities and anomalies of the law. I do not consider it necessary, at this time, to point out the differences between other repealed sections of the old Code which might be regarded as parallel.

As the rules regulating onus probandi in proceedings of this character are not yet settled by the decisions of this state, except on pleas of undue influence, duress, and fraud, I shall at this time not refer to them further than to say they present very serious questions in the as yet not fully developed stage of our jurisprudence. To complete a corpus juris of our own will take several centuries more.

This opinion is perhaps already too extended, but at the outset of the novel proceedings inaugurated by the new Surrogates' Law it is necessary that all the things to which I have alluded should be considered. I have already held that the verdict of a jury is not made conclusive on the surrogate by statute (Matter of Plate [Sur.] 156 N. Y. Supp. 999; Matter of Eno, supra), but this was in conformity with Hawke v. Hawke (82 Hun, 439, 445, 31 N. Y. Supp. 968), where the difference was pointed out between a statute making a verdict conclusive and one not making it conclusive. A motion for judgment on the answers of the jury and a motion for a new trial are in accord with the appropriate sections of the Code cited. That these motions should be deferred, and not made at once on the rendition of the verdict, is in conformity with common prudence, in view of the novel situations created by the new Surrogates' Law.

The motions for judgment and a new trial having come on to be heard after mature and deliberate examination of the record of the

trial in this matter, I am convinced that there was no serious error, and that it was my duty and judicial obligation to direct a verdict in favor of the will. Had I left the matter to the jury, and had they found against the will, the verdict must have been set aside as against the weight of evidence. Herring v. Hoppock, 15 N. Y. 409; Storey v. Brennan, 15 N. Y. 524, 69 Am. Dec. 629; Cagger v. Lansing, 64 N. Y. 417, 413; Moore v. Bristol, 2 Wkly. Dig. 293; Birdsall v. Patterson, 51 N. Y. 43, 47, 48; Browne v. Murdock, 12 Abb. N. C. 360; Dobie v. Armstrong, 160 N. Y. 594, 55 N. E. 302; Hagan v. Sone, 174 N. Y. at page 320, 66 N. E. 973.

The motion for a new trial must therefore be denied, and the motion for decree of probate on the findings of the jury granted. Settle decree on two days' notice, in conformity with this direction, providing that the will propounded for probate is the last will and testament of the testatrix, and as such entitled to probate.