In the Matter of Proving the Last Will and Testament of MARTHA ANNA BARLOW as a Will of Real and Personal Property.

CAROLINE L. HENDRIE and ELBERT S. BARLOW, Contestants, Appellants; NELLIE W. DUNN, Proponent, Respondent.

Second Department, December 21, 1917.

Wills — probate — execution — testamentary incapacity — evidence — right to trial by jury — verdict of jury conclusive — effect of drunkenness upon testamentary capacity.

A proceeding for the probate of a will was contested upon the grounds of testamentary incapacity and lack of due execution of the instrument. Evidence examined, and *held*, insufficient to establish either objection.

The question of the due execution of a will may be submitted to a jury.

Since the amendments of 1914 making the verdict of a jury in probate proceedings a matter of right, the finding of a jury is conclusive, unless the verdict is set aside or a new trial is granted.

An habitual drunkard, though subject to the control of a commission, is not necessarily incapacitated from making a valid will.

APPEAL by the contestants, Caroline L. Hendrie and another, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 11th day of April, 1916, admitting to probate the will of Martha Anna Barlow, deceased, and also from an order entered in said surrogate's office on the 4th day of February, 1916, settling the issues and denying several motions made during the trial.

The contestants further appeal from an order entered in said surrogate's office on the 15th day of May, 1916, denying their motion to set aside the verdict of the jury and for a new trial herein.

*Harold E. Lippincott* [*Frank H. Twyeffort* with him on the brief], for the appellants.

*Frank Harvey Field* [*Richard L. Phillips* with him on the brief], for the respondent.

PUTNAM, J.:

These proceedings were instituted by Nellie W. Dunn, residuary legatee, and daughter of decedent. Both executors named by deceased are dead.

Caroline L. Hendrie and Elbert S. Barlow, daughter and son, respectively, of decedent, filed objections to the probate of the will, and prayed for a jury trial of the issues raised. They alleged that the said last will and testament was not the last will and testament of Martha Anna Barlow, in that it was not duly executed; that said Martha Anna Barlow was not mentally capable of making a will; and that said will was procured by fraud and undue influence.

At the close of the testimony the jury were directed to find in favor of the proponent on the question of undue influence. The jury had two questions:

*First.* Did Martha Anna Barlow, the deceased, possess testamentary capacity at the time of the execution of the alleged will on the 21st day of March, 1898?

*Second.* Was the said alleged will duly executed by her? The jury answered both questions in the affirmative.

Appellants urge error on the grounds: (1) The question of due execution of the will should not be submitted to the jury, since this is a question of law. (2) That their verdict was not conclusive; and that it was the surrogate's duty, before admitting the will to probate, to be satisfied, otherwise than by the jury's findings, that the will was properly executed, and that the testatrix was in all respects competent to make a will and was not under restraint. (3) That the verdict was contrary to the evidence.

The learned surrogate properly left it to the jury to find from the evidence if there had been compliance with the several requirements of the statute, which requirements were stated to the jury in the charge. The contestants had denied that the signature on this will was written by the decedent, and asked that this question be sent to the jury, which the surrogate also submitted to them.

The second point is a contention that under section 2614 of the Code of Civil Procedure the surrogate is the one to be satisfied that the will was properly executed, also that the decedent was not under restraint. It has been held in a learned opinion that the surrogate is not bound to follow a jury's verdict, since, under section 2614, it is his authority to admit the will to probate, so that, unless he is satisfied, he should ignore the jury's findings. (*Matter of Plate,* 93 Misc. Rep. 423.)

The Code of Civil Procedure (§§ 2538, 2539) directs that the surrogate *must* make an order directing the trial by jury of any controverted question of fact, if any party appearing seasonably so demands.

Although section 2614 of the Code of Civil Procedure is still in force, a verdict under section 2538 stands as a finding of fact. Can the surrogate's own convictions override such finding of the triers of fact? (See *Matter of Bartholick,* 141 N. Y. 166.)

These contestants demanded a jury trial. After its result in an adverse verdict, contestants now deny its binding force and insist that the surrogate should pass on the evidence *de novo;* indeed that, if his view of the testimony should be

opposed to that of the jury, he could disregard the verdict. The Legislature did not intend to give such a limited effect to a jury's verdict in a trial ordered as a matter of right.

In some cases juries have been summoned because the court may need help in the matter. Such a verdict is merely advisory. In this way the Court of Chancery availed itself of a verdict of a common-law jury. Likewise in construing commercial writings Lord MANSFIELD often left it to the jury to find what was the mercantile meaning of the document, so that the court might learn the relevant commercial usage. In *Lickbarrow* v. *Mason* (5 Durn. & East, 683, 685), at request of the court, the jury gave a special verdict stating the facts, and adding a finding as to the usages and custom of merchants, upon which the court gave judgment. Although the finding " of the custom of merchants had great weight " (Black. Sales, 288), it was not final, but advisory. In more recent times, Lord ESHER said that almost invariably the opinion of the jury was taken on the meaning of insurance policies and charter parties. (*Stewart* v. *Merchants Marine Ins. Co.*, L. R. 16 Q. B. D. [1885] 619, 627.) Yet in all these instances the verdict was to assist the court in doing justice and was not controlling. And the reason for this lay in the fact that the jury were aiding in the procedure somewhat in the manner of a referee or auditor, and were not acting strictly in their higher function of finding and determining the issue in the case. A litigant in chancery had no right to a jury, and in commercial cases the interpretation of writings, like other documents, was for the court, so that the opinion of a jury could not be demanded as of right.

By the amendments of 1914 (Laws of 1914, chap. 443) the verdict of a jury in probate matters is made a matter of right. The jury, instead of the surrogate, becomes the trier of the issue of the factum of the will, and the requisite conditions surrounding the exercise of testamentary power. This determines what effect should be given to the verdict. In *McClave* v. *Gibb* (157 N. Y. 413) HAIGHT, J., thus states the distinction: " Where a party is entitled by the Constitution, or by express provisions of law, to a trial by jury, of one or more issues of fact, the finding of the jury is conclusive in the action, unless the verdict is set

864 MATTER OF BARLOW.

aside or a new trial is granted; but where the party is not entitled, as of right, to a trial by jury, the verdict is not conclusive upon the parties and the trial court may adopt it, modify it or disregard it and find the facts anew. In the latter class of cases the verdict is treated as an aid to the court to inform its conscience, but it is in no wise bound thereby, for the responsibility of determining the facts rests upon the trial judge, and our Code has not changed the rule in this respect. (Code Civ. Pro. §§ 970, 971; *MacNaughton v. Osgood,* 114 N. Y. 574; *Learned v. Tillotson,* 97 N. Y. 1, 6; *Jackson v. Andrews,* 59 N. Y. 244; *Colie v. Tifft,* 47 N. Y. 119; *Wilson v. Riddle,* 123 U. S. 608; *Van Alst v. Hunter,* 5 Johns. Ch. 148.) "

In 1845, in an attempt to extend the admiralty jurisdiction over the Great Lakes, Congress inserted a proviso, " saving, however, to the parties the right of trial by jury of all facts put in issue in such suits, where either party shall require it." (5 U. S. Stat. at Large, 726, 727, chap. 20; U. S. R. S. § 566.) As admiralty never had juries in civil causes, the courts at first endeavored to limit the application of the statute by treating the verdict as merely advisory because the admiralty judge is responsible for the judgment. (*The Erie Belle,* 20 Fed. Rep. 63; *The City of Toledo,* 73 id. 220.) In view, however, of the clear distinction laid down in *McClave v. Gibb (supra),* the Circuit Court of Appeals for the Second Circuit has held such verdict to be binding, so that if the admiralty court disagree with it, it can only grant a new trial. (*The Western States,* 159 Fed. Rep. 354.) And such, we think, is the power of the surrogate, after a verdict in matters of probate.

While this court reversed a decree in which probate had been denied on a verdict, and then proceeded to admit the will without any new trial (*Matter of Goodhart,* 173 App. Div. 256), the opinion went upon the ground that the facts raised no issue of undue influence (following *Matter of Case,* 214 N. Y. 199), so that there was insufficient evidence for submission to the jury.

It is, however, urged that the finding of testamentary capacity is against the evidence. The will prepared by Mr. Thomas G. Ritch, a prominent member of the bar, was executed March 21, 1898. The subscribing witnesses, Messrs. David F.

Butcher and Frederick B. Campbell, both well-known lawyers, amply proved the formalities of execution.

For many years, however, decedent had been subject to intoxication, and in July, 1899, sixteen months after making this will, she had been adjudged a lunatic from alcoholic dementia, so that a committee of her person and estate was appointed and continued in office until her death in 1915.

But an habitual drunkard, though subject to the control of a commission, is not necessarily incapacitated from making a valid will. (*Lewis* v. *Jones*, 50 Barb. 645.)

If the intemperate habits of the deceased had, to some extent, affected her physical health, and possibly her mental capacity, so that she might be more readily influenced, there was no evidence of undue influence upon the deceased. The question of undue influence was, therefore, taken from the jury.

Decedent's husband, George Barlow, died in January, 1898. His will left to his son Elbert (a contestant here) $90,000 on reaching the age of thirty, to his daughter Caroline L. Hendrie (contestant here) and her children $60,000, to his daughter Nellie Dunn (proponent here) and her children $30,000. When this decedent made the will now probated, she had learned how her husband had distributed his estate, and expressed disapproval of the discrimination between the children, which she evidently sought in a measure to rectify by making Nellie Dunn her residuary legatee. She left in personalty about $25,000, together with some realty, the value of which does not appear. The wish to redress any discrimination in the daughters' shares in the estates left by her husband and by herself was certainly natural and fair to all.

Notwithstanding the adjudication of lunacy in 1899, there was sufficient to warrant the jury in finding that when the will was executed in 1898 her mind was not so affected by her habitual intemperance as to render her incapable of comprehending the condition of her property, or her relation to the persons who were the objects of her bounty. (See *Matter of Ruef*, 180 App. Div. 203.)

The opinion of the learned surrogate (*Matter of Dunn*, 94 Misc. Rep. 578), who had the advantage of seeing and hearing

the witnesses testify, confirms the impression from a perusal of the record that the jury was amply justified in their finding.

I advise, therefore, that the decree and order of the Surrogate's Court of Kings county be affirmed, with costs of this appeal payable out of the estate.

JENKS, P. J., STAPLETON, RICH and BLACKMAR, JJ., concurred.

Decree and order of the Surrogate's Court of Kings county affirmed, with costs of the appeal payable out of the estate.