Matter of the Probate of a Paper Propounded as the Last Will and Testament of GEORGE H. HUBER, Deceased.

(Surrogate's Court, New York County, May, 1918.)

Surrogates' Law of 1914 — duties of surrogate — contested probate proceedings — trial — wills — jurisdiction — jury — witness — evidence — testamentary capacity — verdict — Code Civ. Pro. § 2614.

Under the new Surrogate's Law of 1914 no decree of probate can be entered *pro forma* on the findings of a jury.

Until some surrogate, after the verdict of the jury in a contested probate proceeding, has the courage to say: " I am, as surrogate, not satisfied in my conscience with the verdict and therefore, under section 2614 of the Code of Civil Procedure, I direct a second trial of the issues by another jury before I will decree probate or refuse probate, as the verdict may require," the meaning of. said section, which provides that " Before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution," can only be decided on an appeal from such direction.

Where on the testimony taken in a contested probate proceeding upon the issues of due execution, testamentary capacity and undue influence, there is no issue of fact left for the jury which in accordance with the surrogate's direction answered the questions submitted to it, a motion by proponent based on the directed findings of the jury for a decree of probate will

Surrogate's Court, New York County, May, 1918. [Vol. 103.

be granted and contestants' motion for a new trial will be denied.

Where the issue as to the due execution of the paper propounded as the last will of the testator is fully established, it is not only proper for the surrogate to direct the jury to find that the paper was executed pursuant to the Statute of Wills, but it is error for him not so to do in the absence of testimony which would have justified the submission of that issue to the jury.

Where alleged conflicting declarations of the attesting witnesses made out of court in nowise contradict their testimony as to the due execution of the paper, no submission to the jury as to the credibility of the witnesses is proper.

While the testimony of an attesting witness to a paper propounded as a last will may be impeached by proof of his contradictory statements made out of court, such evidence in order to impeach the attestation of the paper should be extremely clear, and such alleged declarations when made only to contestants or to interested parties and proved by them only are of very little weight.

It being admitted that an attesting witness did act as such and signed the attestation clause, his contradictory declarations, out of court, as to other matters should be scrutinized and disregarded if inconsequential as to the fact of attestation; if such declarations are of a trifling character they amount to nothing as impeachment of credibility, and in any event cannot impeach the fact of attestation or the *factum* of a will admitted to have been witnessed and executed.

The opinions of the attesting witnesses as to the sanity of the testator and his competency to make a will are not impeached by proof of their trifling inconsistent statements made out of court unless there is some other substantial proof of the testator's incompetency.

Where in a contested probate proceeding the contestants on the issue of testamentary capacity offer nothing substantial or proper for the jury to decide, the direction of the surrogate to the jury to find testamentary capacity is not erroneous.

Where the contestants fail to sustain the burden of proof on the issue of undue influence, the surrogate must direct the jury to find the issue in the negative.

PROCEEDING upon the probate of a will.

J. Sidney Bernstein (Max D. Steuer, of counsel), for proponent.

Moses & Henderson, for contestant George Huber Thomson.

Thomas M. Healy, for contestant Michael L. Thiel.

Warren Leslie, for M. Carl Levine..

Lawrence S. Coit, for Louis B. Hasbrouck.

Frederick A. Southworth, for Albert J. Ean.

Alfred E. Hinrichs, special guardian for Carrie T. Coe.

Max Bernstein, special guardian for Bauman infants.

FOWLER, S.   The issues of fact herein having come on before the surrogate and a jury, and on the testimony taken in open court, there being in the opinion of the surrogate no issue of fact left for the jury, the jury answered, in accordance with the surrogate's direction, the questions brought on before them in this contested probate proceeding in this court.   The proponent then moved at a later day for the surrogate's decree of probate, based on the directed findings of the jury, and the contestants at the same time moved on the minutes for a new trial on various grounds then specified.   This was the course suggested in *Matter of Dorsey,* 94 Misc. Rep. 566.   The surrogate having given due consideration to the aforesaid motions is now of the opinion, for the reasons hereafter assigned, that the motion for decree of probate should now be granted, and that the motion for a new trial should be denied.

A probate proceeding conducted by a surrogate with the aid of a jury is in our jurisprudence a somewhat anomalous proceeding. It resembles an inquest conducted by a judicial officer with the aid of a jury, rather than a common-law jury trial in an action. An action at law is a proceeding *in personam*. The verdict ordinarily relates to times and occurrences past and not to a future status of a disputed paper. A probate proceeding, on the other hand, is one *in rem*, instituted not against persons as such, but against the *res* or thing in controversy, *i. e.*, the paper writing purporting to be a will and propounded as such. The final judgment in such a proceeding is a solemn declaration upon the status of the *res* in controversy, and it *ipso facto* determines the future value and the situation of the paper propounded. *Matter of Horton*, 217 N. Y. 363, 368.

The new Surrogates' Law of 1914 first provided for the employment of juries in the long established courts of the surrogates of this state. The act itself is unfortunately not so thoroughgoing a piece of constructive legislation as it might have been. It leaves us much in the dark concerning what was really intended by certain discordant sections of the new Surrogates' Law. Naturally I have been obliged, while sitting in this court, to consider officially the provisions of the act of 1914, and, while I claim for my decisions no authoritative or solemn effect, they were the results of a somewhat extended official experience and also of a careful examination of some of the apparent difficulties raised by the act. *Matter of Plate*, 93 Misc. Rep. 423; *Matter of Eno*, 94 id. 100; *Matter of Dorsey*, Id. 566; *Matter of Vetter*, 95 id. 63.

My particular opinions just noticed seem through some obscurity of diction or from some other cause not to have been quite plain to the understanding, and

I shall therefore take the liberty of alluding to them again in the course of this opinion. I ought to say that I never for a moment held, or intended to hold, that a surrogate, after the act of 1914, could ignore the verdict of a jury rendered in the Surrogate's Court. Of course the surrogate has the usual power of a trial judge to set the verdict aside on established legal grounds. But this is not the point. What I did venture to inquire was whether the surrogate was not placed by section 2614 of the Code of Civil Procedure, in respect to verdicts by juries in this court, in a rather exceptional position, one analogous to the position of the former chancellor, *in foro conscientiae,* so that *suo motu,* and without cause assigned, he could order a second trial of an issue of fact before another jury if the first verdict did not satisfy his official conscience. *Matter of Plate,* 93 Misc. Rep. 423 (the syllabus in *Matter of Plate* is in error in the official report); *Matter of Eno,* 94 id. 100, 102, 103.

It ought to be observed at this point that section 2614 of the Code of Civil Procedure remains the central jurisdictional section of the new Surrogates' Act. It provides that: " Before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and *must be* satisfied with the genuineness of the will, and the validity of its execution." Under the new act no decree of probate can yet be entered *pro forma* on the findings of a jury. The surrogate must still intervene and approve the findings of any jury in his court. By the new law the jury is not yet substituted for the probate judge in this court. Let us consider that it is within the realm of possibility that a verdict by a jury in the Surrogate's Court may or may not satisfy the conscience of some surrogate. If not, can the dissatisfied surrogate for that reason alone, in analogy to the old practice in

chancery, direct, as the chancellor could, that the issues of fact be submitted to another jury? This was the whole point of my inquiry in the decisions cited above, and if we review our judicial history it was an exceedingly natural inquiry under the circumstances. It is a fair argument and inference that the legislature may, by retention of section 2614 of the Code of Civil Procedure, have had in mind the former chancery practice, where the juries were sometimes called in to aid the equity judges, sitting in a court of conscience. Of course the legislature may not have had this old practice in mind, and this would seem to be the *obiter* opinion of the court in *Matter of Barlow, infra.* Whatever may be said to the contrary, the general assumptions of state courts are not very favorable to the intelligence of state legislatures. But certainly the legislature ought to be presumed to have the average intelligence, no less and no more.

Be this as it may, the very learned Appellate Division for the second department, in one of their characteristically able opinions, are mistaken in imputing to me any decision that a surrogate is at liberty to ignore a verdict of a jury rendered in his court. *Matter of Barlow,* 180 App. Div. 860, 862. The only thing I did venture to intimate in *Matter of Plate,* and more particularly in *Matter of Eno,* was that in view of section 2614 of the Code of Civil Procedure it was possible that the surrogate might, like the chancellor, *suo muto,* order a second, perhaps even a third, trial by jury of an issue of fact in order to satisfy his official conscience on disputed matters of fact decided by a jury in this court. Otherwise what possible meaning has section 2614 of the Code of Civil Procedure, requiring the surrogate " *to be satisfied* " in every case before he grants a decree of probate? It is only in some such way as that I suggested that section 2614 of the Code

of Civil Procedure can be reconciled and intelligently made to fit into the new Surrogates' Act. Of course, leaving section 2614 in the act may have been only an oversight when a trial of issues in this court was directed to be had with the aid of a jury, but that is a disagreeable and unauthorized assumption. But if so, it is for the legislature to correct the defect in the act, and not for a court of justice to deprive the surrogate of a judicial power expressly invested in him, and in him alone, by many acts of the legislature of this state. If the inquisition by the jury in a probate cause is for the aid of the surrogate's conscience, what is a conscientious surrogate to do when he is not satisfied with the verdict of a jury? Is he then to forswear himself, violate his conscience, and grant a decree of probate notwithstanding that he is not satisfied? Surely in a civilized community such a conclusion would be intolerable and inconsistent with high principle.

In *Matter of Barlow* the question of the surrogate's power to override a verdict by a jury in a Surrogate's Court seems, from the report of the case, to have been presented to the Appellate Division by the appellant in an unfortunately weak and trifling way, not conducive to a good conclusion on any point. The argument in that case is one *ab inconvenienti* only. Because some suitors were by other acts deprived of a trial by jury it is said conclusiveness is to be given to verdicts of juries under this act. Such a conclusion is a logical fallacy which would not be sanctioned by a disciple of the great logicians Aristotle or Aquinas. The only point raised on the appeal in the *Barlow* case is so trifling as to give the appearance of being made up in order to be formally negatived by a high court. Certainly no rational person could have in good faith contended for an instant, as was done in the *Barlow* appeal, that a surrogate could ignore a

statute of the state granting trial by jury in a contested probate, or that, in contravention of such a statute of the state, he could proceed to a trial without a jury after a jury had been once regularly demanded and impaneled according to the statute. The opinion of the Appellate Division on a point not before them in *Matter of Barlow*, although, as usual, very careful, and on such abstract point most valuable and instructive, could not, however, decide the point I had in mind, viz., that the surrogate could or could not, for the purpose of satisfying his conscience *suo motu*, order a second trial of the issues before another jury, for that proposition was not before the learned Appellate Division in the *Barlow* appeal. Indeed the real question I had in mind can never come up on appeal until some surrogate of this state has the courage and conscience to say, after a verdict rendered by a jury in a will contest: "I am, as surrogate, not satisfied in my conscience with the verdict and therefore, under section 2614 of the Code of Civil Procedure, I direct a second trial of the issues by another jury before I will decree probate or refuse probate, as the verdict may require." On an appeal from such a direction of the surrogate the meaning of section 2614 of the Code of Civil Procedure will then be finally decided on appeal, but not before. The present tendency of American state courts to supplement defective and unscientific legislation by forced intendments is highly dangerous, I fear, to the permanence of our common-law institutions. Of course when the power of a surrogate under section 2614 of the Code of Civil Procedure is regularly presented, even an *obiter dictum* of the second department will be entitled to great weight as the expression of a very careful and very learned court on an important point of law.

On the two motions now here the surrogate's power

*suo motu* to order a new trial before another jury is
not, however, involved. I now assume that the surro-
gate is, by proper and compelling inferences raised
from the new law, bound in a jury trial by all the com-
mon-law rules and controlling decisions, regulating
such trials by jury in the Supreme Courts of this state.
While trials by jury in probate proceedings are, as I
said before, uncommon, they are not in English-speak-
ing countries unprecedented. The Surrogates' Court
Act of the province of Ontario, for example, provides
for trials by jury before the judge of the Surrogate's
Court. But the Ontario act is careful to specify the
rules of procedure and the mode of trial. The English
Probate Act now also provides for trials of issues of
fact in probate proceedings before a judge of assize.
In England the trial by jury does not take place before
the probate judge, but before the judge of assize, and
is regulated by the common-law rules regulating trials
by jury in courts of assize. The *jus fori* is always
controlling in such cases.

In the province of Ontario, and I believe also in
England, where the only issue in a contested will pro-
bate is its due execution under the Statute of Wills,
that issue alone is not regarded as one proper for the
jury. But in a contested probate proceeding where
the issues raised are testamentary capacity, undue
influence or fraud, such issues are now *sub modo*
regarded as proper for the jury, unless, of course, the
evidence offered is too slight to support the issues or
is otherwise insufficient for any legal reason. With
this much by way of explanation and introduction, as
the act providing for jury trials in this court is novel,
we may proceed more directly to the discussion of the
matter in hand.

As before stated, the present motions for the surro-
gate's decree of probate and for a new trial are to be

determined in this court, in so far as possible, by the rules applied in the Supreme Court to similar motions in trials by jury. If the directed verdict of the jury shall be sustained by the surrogate, then the proponents will be of course entitled to have their decree for probate. But if the motion for a new trial shall be sustained, then proponents will not at present be so entitled. This reduces the present inquiry to a single question, Was the surrogate justified by the rules of this state, regulating trials by a jury, in directing the jury to find the issues as they did find them?

The issues in this matter, directed to be tried with the aid of a jury, were, in substance, *first,* the due execution of the paper according to the Statute of Wills; *second,* testamentary capacity; *third,* undue influence. On the issue of due execution (as I said, an issue in other jurisdictions not usually submitted to the jury) the evidence was all one way, and fully established due execution. There was no proof on the part of contestants which would have justified the surrogate in submitting that particular issue to the jury. It was not only proper for the surrogate to direct the jury to find an execution pursuant to the Statute of Wills, but it would have been erroneous not so to do. The rule was tersely stated in *Matter of Ruef,* 180 App. Div. 203, citing *Matter of Case,* 214 N. Y. 99, that, "If the evidence is not sufficient to support a verdict, it is ' in the eye of the law no evidence.' " Under such circumstances a verdict must be directed by the surrogate. *Matter of Sweeny,* 178 App. Div. 780, and cases cited; *Matter of Dorsey,* 94 Misc. Rep. 578; *Matter of Vetter,* 95 id. 66.

The evidence of the execution of the will given by the attending physician, a respectable and entirely disinterested witness, was not contradicted or impeached. The proofs of execution by the second attesting wit-

ness, Mrs. Anna Schlaefer, were also full and complete. Contestants attempted to impeach these witnesses by proofs of contradictory statements. This order of evidence is, at best, generally of little value to contradict an attesting witness. In this proceeding it amounted to nothing of any consequence, so that no submission to the jury of the credibility of the attesting witnesses would have been proper. The alleged conflicting declarations made out of court in nowise contradicted the fact of attestation. The declarations of even deccased attesting witnesses are not now at common law regarded as competent to contradict their actual attestation of a document. *Stobat* v. *Dryden,* Exch. 1836, 1 M. & W. 615; Cockles Cas. 149. In *Matter of Hesdra,* 119 N. Y. 615, the Court of Appeals, however, seem to have preferred to follow *Doe* v. *Ridgway,* 4 Barn. & Ald. 52, a case very much criticised in England. There seems to have been very little argument in the Court of Appeals. In *Stobat* v. *Dryden, supra,* the English court discussed all the prior decisions and deliberately rejected as contrary to the common law the very ground assigned by the Court of Appeals as reason for accepting the declarations of deceased attesting witnesses. See Phipson Law of Ev. (3d ed.) 261.

While it may now be competent to impeach a living attesting witness by proofs of contradictory statements made out of court, such evidence in order to impeach the attestation of a document should be extremely clear, and such alleged statements when made only to contestants or to interested parties and proved by them only are of very little weight. *Matter of Hoffman,* 86 Misc. Rep. 365; *Matter of Klinzer,* 71 id. 620, 635, 636. When it is once admitted in this case that the attesting witness to the will did act as such and signed the certificate of attestation, the statements

39

by such witness out of court as to other matters should be scrutinized, and if inconsequential to the fact of attestation disregarded. If such contradictory statements themselves are of a trifling character they amount to nothing, as impeachment of credibility, and in any event cannot impeach the fact of attestation or the *factum* of a will admitted to have been witnessed and executed. There seems to be some misapprehension of counsel on the point of submitting to the jury the credibility of attesting witnesses concerning matters which are not in fact controverted.

The mere fact that an attesting witness makes discrepant statements on points of his testimony immaterial to the attestation does not render the witness unworthy of belief concerning his attestation not controverted by the contestant. The object of impeaching a witness by proof of his conflicting statement is to destroy his testimony upon material matters. *Larkin* v. *Nassau Elec. R. Co.*, 205 N. Y. 267. But here the material matter was attestation of a will, and attestation was not controverted. If on such evidence as was produced in this matter the jury had disregarded the testimony of the attesting witnesses, or had found contrary to the testimony of such attesting witnesses that they had attested the will, the verdict would have been set aside, and this test is always a legal justification for a direction by the surrogate on the issue of due execution. The opinions of the attesting witnesses, as to the sanity of the deceased, and his competency to make a will, are not impeached by proof of their trifling inconsistent statements out of court, unless there is some other substantial proof of testator's incompetency. Here there was none.

It will, however, be remembered that on an issue of testamentary capacity in this court the burden of proof in a contested probate proceeding is, in this

state, on the whole case undoubtedly on the proponent. But in the first instance the proponent in going forward need only satisfy the statute on this point. If the contestants then offer evidence on the issue which shifts *onus probandi,* the proponent must offer further evidence or fail. If the proponent does offer further evidence, the issue of fact should ordinarily be submitted by the surrogate to the jury (*Matter of Kindberg,* 207 N. Y. 220; *Matter of Smith,* 180 App. Div. 669, 673; *Matter of Fallabella's Will,* 139 N. Y. Supp. 1003; *Matter of Gedney,* 142 id. 157, 161), unless the evidence on one side or the other is so manifestly unsubstantial and trifling as to make such submission absurd or improper. *Matter of Ruef,* 180 App. Div. 203; *Matter of Vetter,* 95 Misc. Rep. 63. In this proceeding there was offered by contestants on the issue of testamentary capacity nothing substantial or proper for the jury to decide, and the surrogate did not err in directing the jury to find testamentary capacity.

We next come to the consideration of the affirmative defense presented by the contestants in this matter. I refer to undue influence. On the issue of undue influence the burden of proof is on the contestants (*Matter of Kindberg,* 207 N. Y. 220; *Matter of Smith,* 180 App. Div. 669), and if they fail to sustain such burden the surrogate must then direct the jury to find the issue in the negative. *Matter of Ruef,* 180 App. Div. 203; affd. above; *Matter of Vetter,* 95 Misc. Rep. 66.

Permit me to add that in a court of probate the conflict of evidence should be clear to warrant the submission to a jury of the well-defined issues arising in a contested probate. The very qualities which make juries so valuable to the country in criminal trials and in other ordinary common-law actions, where the issue

Surrogate's Court, New York County, May, 1918.    [Vol. 103.

of fact is ordinarily single — I refer to the general disposition of juries to do even-handed justice on some rough principle of fair play — somewhat impede their usefulness in contested probate proceedings. In such proceedings the issues for the jury are complex and multiform and not single, i. e., guilty or not guilty, "for plaintiff or for defendant." The tendencies of juries on the multiform issues arising in this court, unless well and firmly guided by the surrogate, are to substitute their own notions of justice on the whole case and to correct what they regard as unfair testamentary dispositions. Able counsel can generally succeed in obfuscating the real issues if the court prove weak or too passive. It is difficult to convince the jury in this court that their sole function is to pass on the issues of fact actually submitted to them and not on the general equities of the particular testamentary situation. For this familiar reason, *inter alia,* I assume, that unless there is an actual conflict of evidence proper for the jury in this court the surrogate would always err if he submitted the issues in a probate proceeding to them.

The effort of contestant's counsel in this court is always to reach the jury on some theory or other. In that event there is some hope at least that the jury may disagree. Now a disagreement impedes probate and the testamentary cause is thus practically gained by the contestants. This situation generally results in some adjustment or compromise in direct conflict most often with the testator's own will. There should never be a middle course in a probate cause. Respect for the last wishes of the dead makes it imperative on right-minded people to execute them. A partial rejection of such wishes is unjustifiable. A will must be either true or false. If false, it should be disregarded. There is no such thing as a last will half true and half false.

Doubtless in a probate cause, where there is a conflict of evidence on a fact material to the issue, the surrogate must without regard to any ulterior consequences submit the issue to the jury, then the sole judge of the fact. In this matter there was no conflict of evidence on any material point, and it would have been error on the part of the surrogate to give the issues to the jury.

On the motion for new trial contestant's counsel conceded in open court that there was no error claimed in regard to the court's reception or rejection of evidence. In his brief he seemed to think better of this generous statement or admission, and he now submits some few alleged errors of rulings on matters of evidence. I have re-examined the specifications and find no substantial error. This court in such a trial as this is protected by a very singular provision of the statute, which does not apply to the other courts of the state on trials by jury. Section 2757 of the Code of Civil Procedure provides that a decree of this court shall not be reversed for error in admitting or rejecting evidence unless exceptant was necessarily prejudiced thereby. I have examined the assignment of errors and find no ruling on evidence which could have prejudiced contestant in the least.

The facts disclosed in this matter were simple. The deceased, an elderly man, left him surviving a wife only. He made his will largely in her favor. It is contested by beneficiaries of a former will, one of whom is the nephew of the widow, in other words her own sister's son. This son of a father living in wedlock with contestant's own mother claims now to be the illegitimate son of the deceased. This statement, to say the least, is unusual. The proofs adduced by the contestants were in my judgment nebulous and defective on every single point, and the case was one

therefore not proper for the jury. To give to the jury a contested probate proceeding, where the evidence was defective, would be in my judgment a highly reprehensible proceeding. It may be that the time has come in social development when succession to estates should not be allowed to be regulated by last will. On this proposition I express no opinion. But until the Statute of Wills is repealed, in this court testamentary dispositions should be protected by the surrogate's rigid application of the settled principles attempted to be cited in this opinion. Otherwise nine times out of ten there will be a gross miscarriage of justice in this court.

The motion for decree of probate is now granted and motion for new trial is denied.

Decreed accordingly.