Froessel, J.
(dissenting). In this second trial of this vigorously contested probate proceeding, while a jury has found that the decedent had testamentary capacity, and that the execution of the alleged will offered for probate and the nomination therein of Sol A. Rosenblatt as one of the executors were not procured by the undue influence of said Rosenblatt or of one Dr. Hoffmann, they could not agree, after more than 15 hours of deliberation, that the clause giving the entire residuary estate to said Rosenblatt was not so procured. Mr. Rosenblatt is an attorney; he met decedent about the middle of December, 1947. Dr. Hoffmann is a psychiatrist, and has been physician to and close friend of Rosenblatt for 18 or 20 years. Decedent came under Dr. Hoffmann’s medical care, according to his own records, at least in part by Rosenblatt’s referral, on March 5, 1948. Less than five months after Rosenblatt’s first meeting with decedent, namely, by May 7, 1948, he had in effect likewise become the residuary beneficiary under decedent’s earlier will, drawn by his partner.
The threshold question presented to us.is whether the final determination of the framed issues in this case was or could be taken away from the Surrogate and mandatorily delegated by the Appellate Division to a jury, although all parties had waived a trial by jury. We think not, and that a reversal upon that ground must follow.
On the previous appeal (281 App. Div. 251), the Appellate Division reversed a prior decree of the Surrogate admitting the alleged will to probate, remanded the case for a new trial, and added: “ We think it is desirable in this case to have a jury trial and so direct ”, citing only Matter of Allaway (187 App. Div. 87), a case to which we will hereafter refer. The Appellate Division also stated: “we do not feel that we can pass an ultimate judgment upon the case absent an explanation from proponent ”, and thus did not pass upon the facts. Their order was, therefore, based on discretion, was nonfinal and neither reviewable nor appealable. Under these circumstances, contestant-appellant could not stipulate for an order absolute under *292 subdivision 3 of section 588 of the Civil Practice Act, and this might in any event have been disastrous because of the factual controversy. Moreover, the Appellate Division did not indicate whether the directory provision mandated a trial by a jury whose findings were conclusive upon the trial court, or merely an advisory jury.
Thus the parties proceeded to the retrial. No one knew until the Surrogate rendered his decision that he would construe the Appellate Division determination as a holding that the verdict of the jury was binding upon him. Appellant may not therefore be charged with waiver for failing to raise the question during the trial, and particularly so since we think the law is clear that this could have been nothing other than an advisory jury, as we shall presently indicate. The opinion of the majority leaves this question undecided. Appellant was therefore justified, in obedience to the direction of the Appellate Division, in submitting to the jury trial, and she had the right to proceed on the theory that it would be treated as an advisory jury only. How then can it be said there was a waiver by appellant before the Surrogate announced otherwise in his decision after the trial was over 1 The question was then properly raised on this appeal.
In his decision, the Surrogate for the first time said: “A jury impaneled at the direction of the higher court must be regarded in the same light as a jury demanded by a party as a matter of right pursuant to Surrogate’s Court Act, Section 68. The verdict of such a jury is not merely advisory and the court may not disregard such a verdict and make independent determinations of fact as in a non-jury trial ” (citing Matter of Eno, 196 App. Div. 131, 155-156, and Matter of Horton, 272 App. Div. 646, 650, affd. 297 N. Y. 891). Neither of these cases is apposite for, in each, one of the parties demanded a jury trial, which is not the case here. This was prejudicial error, since the parties had chosen, as they had the right to do, a trial before the Surrogate alone. The trial lasted six weeks, the record comprised eight printed volumes, one third of which embraced the 455 exhibits, most of them documentary — an exceedingly difficult case for a jury to possess the final word. That is probably why the parties did not ask for a jury, preferring to have it tried by the Surrogate alone. Indeed, the Surrogate told the jury he knew that ‘ ‘ they have not carried the numbers of exhibits *293 in their minds. If they want any and call for any and describe it, we will be able to locate it, because an index has been prepared ’ Yet, when the jury twice asked for an index of the exhibits, even the attorneys could not agree upon such an index, and it was not supplied them.
Section 13 of article VI of our State Constitution (as adopted Nov. 3, 1925) provides: “Surrogates and surrogates’ courts shall have the jurisdiction, legal and equitable, and powers now established by law until otherwise provided by the legislature ”. At that time and since, as well as for many years previously, the Legislature in section 40 of the Surrogate’s Court Act (derived from Code Civ. Pro., § 2510, without change) had established by law the powers of a Surrogate, and among them was the power “ to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding ”, including probate proceedings (subds. 1, 2; emphasis supplied).
So far as is here pertinent, the only modification which the Legislature has made with respect to the Surrogate’s power to “ determine all questions ” is section 68 of the Surrogate’s Court Act, by virtue of which the Surrogate is required to order a jury trial in a probate proceeding upon the demand of a party thereto. In such a case, since this legislative limitation of the Surrogate’s power is authorized by the Constitution, the verdict of such a jury is conclusive (Matter of Barlow, 180 App. Div. 860). By the same section, the Surrogate is authorized in his discretion to order a jury trial even without such demand, but it has repeatedly been held in such case that the jury’s verdict is advisory only (Matter of Boyle, 242 N. Y. 342, 346; Matter of Blair, 242 App. Div. 689; Matter of Erlanger, 136 Misc. 784, 791, affd. 229 App. Div. 778; Matter of Raymond v. Davis, 220 App. Div. 480, revd. on other grounds 248 N. Y. 67; Matter of Barlow, supra; Matter of Doherty, 155 Misc. 396, 398; 1 Butler on New York Surrogate’s Law and Practice, § 473; as to other civil courts, see Civ. Prac. Act, § 430; McKenna v. Meehan, 248 N. Y. 206, 214; McClave v. Gibb, 157 N. Y. 413, 420; Randall v. Randall, 114 N .Y. 499). In New York County, the Surrogate may transfer such a probate proceeding to the Supreme Court for trial. Only where the case is transferred to another court, and the verdict has not been set aside by the judge before whom the proceeding was tried, does the Legis *294 lature provide that the verdict of the jury shall be conclusive upon the Surrogate, and it could hardly be otherwise, for the Surrogate himself could'not very well determine issues which were not tried before him.
Moreover, section 144 of the Surrogate’s Court Act provides: “ Before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution'’ ’. Here the Surrogate was ‘ ‘ satisfied that the propounded paper was executed in accordance with Decedent Estate Law, Section 21 ”. However, he did not state that he was “ satisfied with the genuineness of the will ”, a significant and fatal omission. And when requested to enter a verdict of “ No ” to question No. 3, after the jury disagreed, he refused.
It would appear from the foregoing that, under the relevant constitutional and statutory provisions, the power of the Surrogate to determine the issues in a probate proceeding cannot be taken from him in any other manner except as the Legislature itself has provided in section 68, and the learned Surrogate misconceived his power when he stated he could not disregard the jury’s verdict. His further statement that he felt there was evidence to support the verdict of the jury does not mean that he would have decided the case in the same way, for it is common knowledge that judges frequently announce in open court that while they would have decided the issues differently, they felt bound by the jury’s verdict in cases where that is binding.
Thus, whatever the unexpressed intention of the Appellate Division may have been as to whether or not the jury they directed was an advisory jury only, the fact remains that they had no power to take from the Surrogate upon his own trial the right finally to determine all questions of fact. His power to determine cases within his jurisdiction as authorized by the Constitution and the relevant statutes could not be delegated to a jury, a judge of a local district court, an arbitrator or anyone else.
Moreover, section 8 of article VI of our Constitution and section 584 of the Civil Practice Act provide that upon deciding an appeal an appellate court shall ‘ ‘ render judgment of affirmance, judgment of reversal and final judgment upon the right of any or all of the parties, or judgment of modification thereon *295 according to law, except where it may be necessary or proper to grant a new trial or hearing, when it may grant a new trial or hearing.” (Emphasis supplied.) There is no power to grant a different kind of a new trial or hearing, or before different fact-finders. If, however, the Appellate Division merely intended to exercise the discretionary power of the Surrogate to call in a jury, its answers to framed issues are advisory only. Furthermore, section 309 (last sentence) of the Surrogate’s Court Act expressly provides: ‘ ‘ On the retrial of any issue directed to be retried the same proceedings must be had in respect of such issue as if the retrial were the first trial thereof.” The first trial was a nonjury trial.
Any misconception as to the law in this respect appears to be due to reliance on cases decided under a former statute — section 2588 of the Code of Civil Procedure, repealed in 1914, with the comprehensive revision of the Surrogate’s Court practice provisions of the Code of Civil Procedure. That former statute mandated the Appellate Division, where its reversal in a probate proceeding was founded upon a question of fact, to direct a jury trial. Matter of Hopkins (172 N. Y. 360 [1902]), for example, ordered a retrial by jury because the statute at that time mandated it. This was made clear on the motion for reargument (176 N. Y. 596). It is true that in that ease there was dictum, without citation of authority, to the effect that the appellate court may do it in any other case, but this court declined to follow that dictum in Matter of Sherman (227 N. Y. 350), decided in 1919, after the 1914 revision of Surrogate’s Court practice. This is made crystal clear in Judge McLaughlin’s dissent in that case (p. 360). In Matter of Allaway (187 App. Div. 87 [2d dept.]), the only case cited by the Appellate Division below, the court relied upon Matter of Tompkins (69 App. Div. 474 [1902]), which was decided before the repeal of the former statute. In a later decision (Matter of Salomon, 219 App. Div. 836), the same Appellate Division also directed a retrial by a jury, but made it clear that it was pursuant to section 430 of the Civil Practice Act, thus contemplating an advisory jury.
By way of recapitulation, we conclude (1) that the Surrogate misconstrued the determination of the Appellate Division in holding that the answers of the jury to the framed questions were binding upon him; (2) that the Appellate Division was *296 powerless to take from the Surrogate Ms constitutional and statutory right and duty to determine the issues in this ease; (3) that there had been no waiver on the part of the contestant-appellant to raise these questions, and (4) that for these reasons there must be a new trial. We reach no other question.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered before the Surrogate, with costs to all parties appearing separately and filing separate briefs payable out of the estate.
Dye, Fuld and Burke, JJ., concur with Desmond, J.; Froessel, J., dissents in an opinion in which Conway, Ch. J., concurs; Van Voorhis, J., taking no part.
Order affirmed.